**PARAMOUNT COMMUNICATIONS, INC. and Simon & Schuster, Inc., Plaintiffs,**

**v.**

**Patrick DONAGHY, Defendant.**

**93 Civ. 8611 (RWS).**

United States District Court, S.D. New York.

July 15, 1994.

**392**

Kay Collyer & Boose (Marcia B. Paul, Gabrielle V. Davis, of counsel), New York City, for plaintiffs.

Butler, Fitzgerald & Potter (Andrew Sidman, David McCarthy, of counsel), New York City, Coffield Ungaretti & Harris (Phillip M. Goldberg, Nancy L. Hendrickson, of counsel), Chicago, IL, for defendant.

## OPINION

SWEET, District Judge.

Plaintiffs Paramount Communications, Inc. ("PCI") and Simon & Schuster, Inc. (together with PCI, "Paramount" or the "Plaintiffs") have moved, pursuant to Canons 5 and 7 of the New York Code of Professional Responsibility (the "Code") for an order disqualifying the law firm of Coffield Ungaretti & Harris ("Coffield") from representing defendant Patrick Donaghy in this action, and denying Coffield's application to appear *pro hac vice* as co-counsel for Donaghy. For the following reasons, this motion is denied.

### Parties

PCI is a publicly traded Delaware corporation with its principal place of business in the City and County of New York and is engaged in the communications and entertainment business. Paramount Publishing is an affiliate of PCI, incorporated under the laws of the State of New York, with its principal place of business in the City and County of New York, and is engaged in the business of book publishing.

Donaghy is a citizen and resident of the State of New Jersey, and was employed by Paramount Publishing beginning August 1, 1981. Coffield Ungaretti & Harris is a law firm with its main office in Chicago, Illinois.

### Facts

This motion springs from a declaratory judgment action involving Donaghy's pur-

ported entitlement to exercise certain stock options (the "Options") granted to him during his employment by Paramount. In 1991, Donaghy ceased working for Paramount and, in an exchange of correspondence regarding Donaghy's departure, Paramount Publishing wrote a letter (the "August Letter") which arguably suggested that Donaghy could exercise the Options up to three years after his termination.

In response to the August Letter, Coffield wrote Paramount Publishing requesting copies of relevant documents so that it could advise its client regarding his Options. Coffield thereafter received certain materials from Paramount, and possibly had additional contacts with Paramount regarding Donaghy's departure.

According to Paramount, Donaghy had until at least September 30, 1991 to exercise his options. The Plaintiffs claim that Coffield's receipt of the requested documents after the August Letter and before the September 30, 1991 deadline impacts Donaghy's claims of justifiable reliance on the August 1991 letter and his potential modification of contract claims.

The Plaintiffs conclude from these facts that Coffield must be disqualified from representation of Donaghy in this action because, upon receipt of the materials requested from Paramount, Coffield could have done one of two things. Coffield could have advised Donaghy that he could not rely on the August Letter, in which case Coffield cannot ethically maintain certain of the positions asserted in Donaghy's Answer in this action regarding Donaghy's reliance on the August Letter.

Alternatively, Coffield could have advised Donaghy that he could rely on the August Letter, which advice could, according to the Plaintiffs, expose Coffield to malpractice liability, which would prevent Coffield from exercising independent judgment in this case. Whichever advice Coffield rendered, the Plaintiffs assert, Coffield attorneys will be called as witnesses by the Plaintiffs, at which time they would necessarily testify to matters substantially likely to be prejudicial to Donaghy.

The Plaintiffs claim that they notified Donaghy of these potential grounds for disqualification prior to his choosing local counsel in this action, and that this motion has been brought at an early point in these proceedings to minimize any prejudice to Donaghy.

### Prior Proceedings

The Plaintiffs commenced this declaratory judgment action in November of 1993. Argument was heard on the present motion on May 11, 1994, and on June 23, 1994, Paramount informed the Court by letter that Donaghy is asserting, and not waiving, the attorney client privilege in connection with the advice rendered to him by Coffield, to which letter Coffield responded by letter of June 24, 1994. The motion was considered fully submitted as of June 24, 1994.

### Relevant Code Provisions

Canon 5 of the Code states: "A lawyer should exercise independent professional judgment on behalf of a client." Disciplinary Rule ("DR") 5–101(A) and (C), promulgated under that Canon, states:

DR5–101   Refusing Employment When the Interests of the Lawyer May Impair Independent Professional Judgment.

A.   Except with the consent of its client after full disclosure, a lawyer shall not accept employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests.

      \*      \*      \*      \*      \*      \*

C.   Neither a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation of the lawyer knows or it is obvious that the lawyer or another lawyer in the lawyer's firm may be called as a witness other than on behalf of the client, and it is apparent that the testimony would or might be prejudicial to the client.

DR5–102(B) provides that:

DR5–102   Withdrawal as Counsel When the Lawyer Becomes a Witness.

B.   If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the

lawyer or a lawyer in his or her firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal.

Canon 7 of the Code provides that "[a] lawyer should represent a client zealously within the bounds of the law."

### Discussion

■ The Code is recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar. *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976). Motions to disqualify opposing counsel under the Code, however, are viewed with disfavor. *Clark v. Bank of New York*, 801 F.Supp. 1182, 1197 (S.D.N.Y.1992); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (collecting cases). The principle reason for this is that disqualification of counsel impinges on parties' rights to employ the attorney of their choice. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983). "The Court of Appeals [for the Second Circuit] has cautioned that motions to disqualify counsel ... can inflict serious harm on the party whose lawyer is disqualified ... 'for in disqualification matters we must be solicitous of a client's right freely to choose his counsel....' " *Ullrich v. Hearst Corp.*, 809 F.Supp. 229, 236 (S.D.N.Y.1992) (quoting *Evans*, 715 F.2d at 791).

■ Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted, *Evans*, 715 F.2d at 791; *Kubin v. Miller*, 801 F.Supp. 1101, 1112 (S.D.N.Y. 1992); *Football League*, 605 F.Supp. at 1453, and "mere speculations will not suffice," *Paretti v. Cavalier Label Co.*, 722 F.Supp. 985, 987 (S.D.N.Y.1989). Disqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the "strong potential for abuse" when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel. *Russo v. Friedman*, 91 Civ. 6913,

1992 WL 196791, 1992 U.S. Dist. LEXIS 11418 (S.D.N.Y. July 31, 1992); *Parke–Hayden, Inc. v. Loews Theatre Management Corp.*, 794 F.Supp. 525, 527 (S.D.N.Y.1992).

"Mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion" except in unusual circumstances. *Football League*, 605 F.Supp. at 1452; *New York Inst. of Tech. v. Biosound, Inc.*, 658 F.Supp. 759, 761 (S.D.N.Y.1987). Courts "are reluctant to rest disqualification of counsel solely upon Canon 9 [requiring avoidance of appearance of impropriety]. Instead, courts generally require proof that another Canon has been violated." *Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538 (S.D.N.Y.1989) (citations omitted).

■ With respect to DR5–101(A), this rule does not require disqualification if the client consents to continued representation following full disclosure. Donaghy's affidavit makes it clear that he has been apprised of all relevant facts and that he consents to Coffield's continuing to represent him. (Donaghy Aff. at ¶ 12.) The cases and Bar Association opinions cited by Paramount to suggest that the client's autonomy protected by DR5–101(A) should be overridden refer to situations where the attorneys' self interest was more immediate than that which has been demonstrated in the present case.

■ Paramount asserts that, even if DR5–101(A) is not determinative, Coffield should be disqualified on the basis of DR5–101(C) and DR5–102(B), collectively referred to as the "advocate-witness rules." In order to disqualify Coffield on the basis of the advocate-witness rules, Paramount must demonstrate that the testimony of a Coffield witness is necessary, and that this testimony is substantially likely to be prejudicial to Donaghy. *Parke–Hayden*, 794 F.Supp. at 527.

■ A finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary. *S & S Hotel Ventures L.P. v. 777 S.H. Corp.*, 69 N.Y.2d

437, 515 N.Y.S.2d 735, 739, 508 N.E.2d 647, 651 (1987).

■ Testimony of an attorney is considered prejudicial if it is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony. The movant bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial. *Parke–Hayden,* 794 F.Supp. at 527.

Donaghy is asserting the attorney-client privilege with respect to the advice rendered to him by Coffield. The first issue that must be determined, therefore, is whether this privilege has been impliedly waived because this will affect the nature and scope of the testimony Paramount seeks from Coffield attorneys.

Paramount argues that Donaghy will necessarily impliedly waive his attorney-client privilege in this litigation because "[a]n attorney-client privilege may be waived if a party 'injects into … litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorney's conduct.'" *Grant Thornton v. Syracuse Savs. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *GAB Business Servs., Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir.1987)). The privilege may also be impliedly waived where a party "asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).

Certain positions taken or potentially taken by Donaghy raise issues of his reliance on Paramount's representations, including those made in the August Letter. Paramount claims that this puts or will put into issue the question of what advice Donaghy received from Coffield attorneys with respect to his departure from Paramount and his exercise *vel non* of his Options, thereby waiving the attorney-client privilege with respect to these communications.

■ In this Circuit, the question of whether a party has impliedly waived the attorney-client privilege is often answered with reference to the factors set forth in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975), namely, whether the assertion of the privilege was a result of some affirmative act by the asserting party; whether through this affirmative act the asserting party put the protected information at issue by making it relevant to the case; and whether application of the privilege would have denied the opposing party access to information vital to its defense. *See Bowne, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 488 (S.D.N.Y.1993) (collecting cases).

The *Hearn* factors have been applied by this Court to cases similar to the instant one and found not to effect implied waiver of the attorney-client privilege. In *Standard Chartered Bank PLC v. Ayala International Holdings (U.S.), Inc.,* 111 F.R.D. 76 (S.D.N.Y.1986), the plaintiff bank sued the defendant for breach of contract and fraudulent inducement in connection with a guarantee agreement. The defendant filed counterclaims premised on oral representations allegedly made by the plaintiff, in reliance upon which the defendant initially became involved in the financial transactions that resulted in the guarantee agreement.

The plaintiff argued that, since the defendant interposed counterclaims alleging reliance upon the plaintiff's oral representations, the plaintiff was entitled to disclosure of communications among the defendant and its attorneys to show that the defendant did not justifiably rely upon the plaintiff's oral representations, but rather relied upon its own business judgment and the guidance of its attorneys. *Standard,* 111 F.R.D. at 79.

Citing *Hearn,* this Court held that what was relevant to the counter-claims was not the communications among the defendant and its attorneys, but what the defendant knew or should reasonably have been expected to know prior to entering into the transaction in question. The Court went on to state that "[t]o be sure, as in every lawsuit, it would be useful and convenient for [the plaintiff] to obtain [the defendant's] privileged material, and the substance of its confidential

communications with its attorneys might reveal some of what [the defendant] knew. But those are not reasons to void the attorney-client privilege." The Court pointed out that the privileged communications were not the only available means by which the plaintiff could learn what the defendant knew, since this could be asked of the defendant. The Court continued that:

> Whatever advice, right or wrong, that [the defendant] received from its attorneys concerning [the transactions], and whether or not [the defendant] disregarded its attorneys' advice, are irrelevant to the issue of whether [the defendant] actually relied on [the plaintiff's] statements and whether, as a matter of law, it was entitled to so rely based on all the facts known to it. Information on the former question can be obtained from [the defendant] and the latter question is to be determined by proceedings in this court, not by the opinion of [the defendant's] lawyers.

*Id.* at 81.

In making this decision, the Court relied upon another factually similar case, *Chase Manhattan Bank, N.A. v. Drysdale Securities Corp.*, 587 F.Supp. 57 (S.D.N.Y.1984). In this case, Chase sued Arthur Andersen & Co. on an allegedly fraudulent opinion concerning a company in which Chase traded securities. Arthur Andersen sought access to communications from Chase's legal department given to Chase while the trading was being conducted.

The Court, citing *Hearn*, determined that:

> In this case, Andersen asserts that there is a waiver implied by Chase's filing of the securities fraud suit, which includes justifiable reliance as an element. This is said to put the prudence of Chase's behavior in issue, possibly to break the chain of causation flowing from the misrepresentations in Andersen's original opinion. While it may be useful to Andersen to know the substance of the advice Chase received concerning its liability on the transactions, I do not believe that the communications are essential to establish what a reasonably

prudent bank should have known and should have done under the circumstances. *Chase*, 587 F.Supp. at 58.

The citations that Paramount offers do not defeat the logic of *Standard* and *Chase*. *Bowne* involved a late mailing of certain proxy statements, for which the defendant blamed the plaintiff printing company and the counter-claim defendant, which was purportedly responsible for distributing the proxies. When the defendant failed to pay the plaintiff's printing bills, the plaintiff brought suit, after which the defendant filed counterclaims premised on the assertion that these parties had failed to timely fulfill their obligations.

The plaintiffs and the counter-claim defendants argued that the defendant had waived the protection of the attorney-client privilege by virtue of its assertion of the counterclaims concerning the late mailing. There was testimony that the defendant's attorneys had played a major role in the events leading to the printing of the proxies, by dealing directly with the printer and others, and that they had also made decisions as to the timing of these events.

Applying the *Hearn* factors, the *Bowne* Court found it "arguable" that the attorney-client privilege had been waived for communications by the defendant's attorneys concerning the intended timing of submission of materials to the printer and the events that led to the missed mailing. By asserting counterclaims that depended on assessing who was to blame for the delay in the mailing, the defendant had put into issue the discussions that it had had with its attorneys regarding the arrangement, preparation and printing of the materials, and the instructions of the attorneys to other participants concerning the timing and management of the events leading to the mailing. *Bowne*, 150 F.R.D. at 488–89.

The counter-claims asserted in *Bowne* implicated the actions and advice of the attorneys in question more directly than do Donaghy's assertions in the present case. The application of the *Hearn* factors to the facts in *Bowne* is not determinative of the application of the *Hearn* factors to the present case, particularly in light of the holdings in the

factually more similar cases referred to above.

Courts have found waiver when a parties' claims specifically rely on advice of counsel. In *Orco Bank, N.V. v. Proteinas Del Pacifico, S.A.,* 179 A.D.2d 390, 577 N.Y.S.2d 841 (1st Dept.1992), also cited by Paramount, the plaintiff made two loans allegedly in reliance upon a letter of safekeeping by a manager of the defendant to the effect that it held $10 million in U.S. Treasury securities at the disposal of the plaintiff, which, it later developed, was false. In the deposition of the plaintiff's president, the defendant attempted to probe the measures plaintiff took to assure itself of the existence of the security, and was told that the plaintiff relied upon the advice of its lawyers who informed it, for example, that "we had a good security". The plaintiff withheld more detailed testimony, and documents, on grounds of attorney-client privilege.

The Appellate Division held that the plaintiff had waived the attorney-client privilege by making selective disclosure of such advice and by claiming to have relied on the advice of their attorneys.

Likewise, in *Bilzerian,* the defendant in a criminal securities fraud proceeding made a motion *in limine* seeking a ruling permitting him to testify regarding his belief in the lawfulness of his activities without being subjected to cross-examination on communications he had with his attorney on the subject. The District Court declined to rule on the issue in the abstract, but stated that if the defendant testified regarding his good faith with respect to the legality of his actions, it would open the door to cross-examination with respect to the basis for his belief, including inquiry into communications with his attorney.

The Second Circuit, also citing to *Hearn,* upheld the denial of the *in limine* motion because the defendant's testimony that he thought his actions were legal would have put his knowledge of the law in issue. The *Bilzerian* defendant's assertion that his actions comported with the specific requirements of the securities law implicated his knowledge of that law in a way different from Donaghy's assertion that he relied in good faith on the written assertions of his employer.

In addition, the Circuit Court noted that, in his motion, the defendant was seeking an advisory ruling in advance, assuring him that the attorney-client privilege would not be waived regardless of what developed in his direct testimony. *Bilzerian,* 926 F.2d at 1293. Similarly, Paramount is effectively asking the Court to rule that Donaghy will have waived the attorney-client privilege regardless of how testimony develops at trial. (Paramount Rep.Mem. at 10.) Without commenting on whether Donaghy may waive the attorney-client privilege at some future date, on the present record it does not appear that he will unavoidably do so. *Bilzerian* therefore does not subvert the application of the *Hearn* factors in the cases, referred to above, which are factually more similar to the present case.[1]

██ In the cases cited by Paramount, the attorney-client relationship was itself relied upon, in some fashion, affirmatively to support the asserting party's claims, or their was evidence that the attorneys themselves independently took actions or made decisions relevant to the case. This element is absent from *Standard* and *Chase,* and does not appear unavoidably present in this case at this time. Donaghy may be taxed with any information Paramount supplied to his attorneys, and the issue of implied waiver of the attorney-client privilege will be revisited at any time that Donaghy seeks to use his attorneys' advice to bolster his claims of reliance, or in any other appropriate circumstances. On the present record, however, it does not appear that Donaghy has waived, or unavoidably must waive, the confidentiality of his communications protected by the attorney-client privilege.

### No Grounds for Disqualification Have Been Demonstrated

██ Paramount claims that, even assuming Donaghy has not waived the attorney-

---

**1.** The cases cited by Paramount from other jurisdictions likewise do not alter the persuasive force of the precedents discussed from this jurisdiction.

client privilege, it will need to elicit certain testimony from Coffield attorneys. First, it would elicit the testimony that Coffield sent an inquiry letter to Paramount requesting documentation so that it could properly advise its client. Paramount does not indicate why it would be necessary to call Coffield attorneys for the purpose of eliciting this information, as the letter itself would presumably demonstrate that the letter had been sent from Coffield to Paramount.

Next, Paramount claims that it would call Coffield attorneys to elicit testimony regarding what steps Coffield took to garner information in order to render advice to Donaghy. The advice, if any, that the Coffield attorneys rendered to Donaghy was a function of a variety of factors, including their education, prior experience, and the materials reviewed by them. The advice that Coffield attorneys rendered to Donaghy is relevant to this lawsuit, not the basis of that advice. Donaghy can testify regarding what advice he received from Coffield attorneys, and Coffield attorney Thomas has supplied an affidavit claiming that his testimony would be consistent with Donaghy's. It does not now appear that it will be necessary to have Coffield testify regarding its preparation methods.

Paramount next argues that "[i]t is perhaps possible that Donaghy told his Coffield lawyer(s) not to bother analyzing the documents received and not to render advice to him, as he intended to rely on the August Letter." The conjuring of "perhaps possible" scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial.

Paramount next argues that the mere fact that Coffield advised Donaghy with respect to the materials received from Paramount, or that Donaghy advised Donaghy that the materials had been received, is material and prejudicial to Donaghy. In his affidavit in opposition to this motion, Coffield Attorney Thomas indicates that he represented Donaghy in connection with his departure from Paramount, and lists the documents received from Paramount on behalf of Donaghy, and therefore these issues do not appear to be in dispute.

Paramount's additional arguments for disqualification, expressed in somewhat tortuous language, also lack merit. For example, Paramount claims that Coffield's continued representation of Donaghy would place Coffield in the untenable position of having to maintain its silence if Donaghy falsely testifies that Coffield advised him that he did not have to exercise his options. As noted, Coffield presently anticipates that its account of the relevant facts coincides with that of Donaghy.

Conversely, Paramount asserts that Coffield must be disqualified because its self-interest in ensuring that its malpractice not be revealed gives it an unacceptable interest in keeping Donaghy from explicitly waiving the attorney-client privilege, thereby making it ineligible to render advice to Donaghy regarding waiver of the privilege. Donaghy has testified, however, that Coffield itself informed him of its potential malpractice liability in this affair. (Donaghy Aff. ¶ 12.) As Coffield is doubtless aware, keeping accounts of its representation of Donaghy out of the present record would not prevent Donaghy from bringing an action in malpractice against Coffield.

Paramount has failed to meet the high standard of proof required for the disqualification of Coffield in this matter. Paramount may renew its application to disqualify Coffield should new facts become apparent to support such a measure.

### Conclusion

For the reasons stated above, Paramount's motion to disqualify Coffield from representing Donaghy in this action is denied.

It is so ordered.