**Christopher H. FORREST, Plaintiff,**

v.

**PAR PHARMACEUTICAL, INC., Defendant.**

**No. 98 Civ. 5594(BDP).**

United States District Court, S.D. New York.

April 22, 1999.

Kevin T. Mulhearn, Orangeburg, NY, for plaintiff.

Joseph A. Saccomano Jr., Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, Jonathan P. Graham, William & Connolly, Washington, DC, for defendant.

### *MEMORANDUM DECISION AND ORDER*

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Christopher H. Forrest sued his employer, Par Pharmaceutical, Inc. ("Par"), alleging race discrimination. *See* 42 U.S.C. § 2000e *et seq.* Par now moves to disqualify plaintiff Forrest's counsel, Kevin Mulhearn, Esq., on the ground that he is a key witness to material events. *See* N.Y.COMP.CODES R. & REGS. tit. 22, § 1200.21(b) (1998), MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 5–102(b) (1980). For the reasons stated, the motion is denied.

### BACKGROUND

From 1990 to April 6, 1998, Forrest was employed by Par in its Quality Assurance Department. Forrest was responsible for

making and maintaining entries in a logbook tracking the movements of controlled substances into and out of Par's controlled substances vault.

On October 22, 1997, plaintiff filed a complaint against Par with the New York State Division of Human Rights alleging various incidents of race discrimination. On May 13, 1998, the Division of Human Rights issued Forrest a Notice of Right to Sue and on July 15, 1998, he commenced this action.

On February 2, 1998, while plaintiff was still employed by Par, Par received a complaint from a distributor complaining that it had purchased what it believed to be a package of ten bottles of triazolam tablets, a controlled substance used to treat insomnia. Instead of receiving ten bottles, the distributor claimed to have received nine bottles of triazolam and one bottle of captopril, an ACE inhibitor used to treat hypertension. As a result of the complaint, Par commenced an internal investigation and determined that the controlled substances vault logbook contained a number of apparently erroneous entries. In addition, one of the entries for the triazolam lot in question appeared to bear Forrest's signature which appeared to have been altered. This discovery led to numerous other questions concerning entries Forrest had allegedly made, failed to make, or improperly changed.

As a consequence of Par's discovery, on February 4, 1998, Par's President, Kenneth Sawyer, interviewed Forrest. Forrest was unable to explain the logbook entries to Sawyer's satisfaction and was subsequently suspended with pay while the investigation continued. On February 5, Mulhearn sent Sawyer a letter stating that it was Forrest's belief that Par's allegations were merely attempts to "distort his record and performance in view of his pending legal action" against Par. Also on February 5, Sawyer sent Forrest a letter offering him an opportunity to "supplement, modify or change" the substance of his verbal statements from the previous day's interview. In a subsequent letter to Sawyer dated February 6, apparently responding to Sawyer's February 5 offer to Forrest, Mulhearn stated:

You attribute certain entries made in the controlled substance vault reconciliation book to Mr. Forrest. Yet Mr. Forrest told you on Wednesday, February 4, 1998, and hereby affirms, that he did not make the entry corrections in question. He stated, and hereby affirms, that the signature in question is not his; and he stated, and hereby affirms, that he did not make the date entry for the subject correction in said logbook.

In a letter dated February 10, 1998, Par's attorney, Roger Kaplan, Esq., retained in connection with Forrest's race discrimination suit, responded to Mulhearn's letter. Kaplan requested an affidavit from Forrest affirming that he had not made certain logbook entries and that someone else had made the entries to appear to be Forrest's. Mulhearn thereafter sent Kaplan an unexecuted draft affidavit which stated that Forrest had "no independent recollection" of making, initialing or dating the logbook entries and that the entries do "not appear to be in my [Forrest's] handwriting, and are written differently from how I normally write."

Citing differences in syntax between Mulhearn's February 6 letter and Forrest's unexecuted affidavit, Kaplan phoned Mulhearn on February 24, 1998 and requested that the affidavit be redrafted to contain language similar to that of the February 6 letter. Mulhearn initially agreed, but called back that same day and refused to make the changes. Par now contends that Mulhearn claimed "perjury concerns" for not modifying the affidavit.

Mulhearn, on the other hand contends in his Affirmation in response to Par's Motion to Disqualify that he did not want opposing counsel to serve as a draftsman for an affidavit for Mulhearn's client, and that Mulhearn was concerned about including an absolute denial in an affidavit that

concerned events that had occurred months earlier and involved routine and frequently repeated activities. Mulhearn also contends that he told Kaplan during the second February 24 phone conversation "that [he] did not want [his] client to make unequivocal statements that might later prove to be untrue in view of the fact that th[e] affidavit contained testimony sworn to under penalties of perjury."

On November 25, 1998, Par moved to disqualify Mulhearn pursuant to DR 5–102(b) on the ground that it intends to call Mulhearn as a "key witness" to help establish that Forrest's termination was for a proper business purpose and not in retaliation for his discrimination claim. Par also seeks Mulhearn's testimony concerning plaintiff's alleged "midcourse correction" resulting in differing language in the February 6 letter and the subsequent unexecuted affidavit. Par contends that the unequivocal denials of wrongdoing made by Mulhearn on behalf of Forrest in the February 6 letter are inconsistent with the language of Forrest's unexecuted affidavit denying any "independent recollection" of making the suspect entries. Finally, Par intends to call Mulhearn to testify about Forrest's attempt to tape-record the March 26 meeting with Par representatives.

### DISCUSSION

■ Our Circuit recognizes the New York Code of Professional Responsibility as prescribing appropriate guidelines for professional conduct. *See NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976). Motions to disqualify an attorney under DR 5–102(b), however, are subject to disfavor and to strict scrutiny because of their potential for abuse. *See Parke–Hayden, Inc. v. Loews Theatre Management Corp.*, 794 F.Supp. 525, 527 (S.D.N.Y.1992) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989)). Specifically, "[d]isqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of

the 'strong potential for abuse' when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel." *Paramount Communications, Inc. v. Donaghy*, 858 F.Supp. 391, 394 (S.D.N.Y.1994) (citing *Russo v. Friedman*, 91 Civ. 6913, 1992 WL 196791, 1992 U.S. Dist. LEXIS 11418 (S.D.N.Y. July 31, 1992)). *See Clark v. Bank of New York*, 801 F.Supp. 1182, 1197 (S.D.N.Y. 1992).

■ DR 5–102(b) states:

> If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ... may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer ... must withdraw acting as an advocate before the tribunal.

N.Y.COMP.CODES R. & REGS. tit. 22, § 1200.21(b), MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 5–102(b). While a literal reading of the rule requires disqualification if the testimony of the advocate-witness *may* be prejudicial to the client, "under New York law the party seeking disqualification must demonstrate that it is likely that the 'testimony to be given by the witness is necessary' and that it is substantially likely to be prejudicial to the party represented." *Parke–Hayden, Inc.*, 794 F.Supp. at 527 (quoting *Luk Lamellen U. Kupplungsbau GmbH v. Lerner*, 167 A.D.2d 451, 452, 562 N.Y.S.2d 134 (2d Dep't 1990)). The party seeking disqualification must also demonstrate "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of the prejudice occurring is substantial." *Lamborn*, 873 F.2d at 531 (citations omitted). These principles mean that the party seeking disqualification must meet a high standard of proof. *See Paramount Communications, Inc.*, 858 F.Supp. at 394 (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983)).

248

■ The significance of the matter to be attested to, the weight of the testimony and the availability of other evidence determine the "necessity" of testimony. *See Parke–Hayden, Inc.,* 794 F.Supp. at 527 (citing *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.,* 69 N.Y.2d 437, 446, 515 N.Y.S.2d 735, 740, 508 N.E.2d 647, 651 (1987)); *Paramount Communications, Inc.,* 858 F.Supp. at 394. Testimony may be relevant and even highly useful but not strictly necessary. *See Paramount Communications, Inc.,* 858 F.Supp. at 394 (citing *S & S Hotel Ventures Ltd. Partnership,* 69 N.Y.2d at 446, 515 N.Y.S.2d at 740, 508 N.E.2d at 651). In *Paramount,* for example, the court refused to disqualify the defendant's attorneys where the plaintiff sought to have those attorneys testify regarding the steps the attorneys took in preparation to render legal advice to the defendant. *Paramount Communications, Inc.,* 858 F.Supp. at 398. Reasoning that the advice provided by the attorneys to the defendant was based on a variety of factors, including the attorneys' education, experience and the materials that they reviewed, the court stated that while the attorneys' advice itself was relevant to the lawsuit, the basis or preparation of that advice was not. *Paramount Communications, Inc.,* 858 F.Supp. at 398. Thus, because the defendant was capable of testifying as to the advice he received, his attorneys' testimony regarding the preparation involved in providing that advice was neither relevant nor necessary. *Paramount Communications, Inc.,* 858 F.Supp. at 398.

■ Similarly, in this case, better than any other witness, Forrest can testify as to the procedure and circumstances of the investigation and his statements, as well as to his beliefs that he was accused of wrongdoing solely as an attempt to scar his employment record. Forrest is also the most logical witness to testify concerning his alleged "midcourse correction" and his own decision to tape-record the March 26, 1998 meeting.

In finding no necessity for the testimony of defendant's attorney, the court in *Paramount* also noted that the attorney had supplied an affidavit claiming that his testimony would be consistent with that of his client. *Paramount Communications, Inc.,* 858 F.Supp. at 398. Here, Mulhearn provided a sworn affirmation in response to defendant's motion to disqualify stating that, *inter alia,* his testimony would be consistent with that of his client. Thus, Mulhearn's testimony would not only be unnecessary, but cumulative as well. *See Parke–Hayden, Inc.,* 794 F.Supp. at 528 (stating that testimony is not "necessary" where it would be cumulative of other evidence) (citing *Kirshon, Shron, Cornell & Teitelbaum P.C. v. Savarese,* 182 A.D.2d 911, 581 N.Y.S.2d 487 (3d Dep't 1992)).

■ Disqualification is also improper because Mulhearn's testimony would not prejudice Forrest. Advocate-witness testimony is prejudicial under DR 5–102(b) if the "projected testimony of a lawyer ... [is] sufficiently adverse to the factual assertions or account of events offered on behalf of the client." *Rice v. Baron,* 456 F.Supp. 1361, 1371 (S.D.N.Y.1978) (citation omitted) (finding that the desired advocate-witness testimony was not sufficiently adverse to the client's factual assertions as to require disqualification because there was no indication that the testimony would contradict the client's contentions) (*cited with approval in Lamborn,* 873 F.2d at 531). *See also Paramount Communications, Inc.,* 858 F.Supp. at 394; *Parke–Hayden,* 794 F.Supp. at 527.

Par has not met the requirement of "prejudicial testimony." In opposition to Par's motion Mulhearn has submitted an affidavit setting forth facts substantially similar to those put forth by Forrest directly to Par representatives on February 4 and March 26 as well as those contained in his unexecuted affidavit and Mulhearn's letters of February 5 and February 6 written on behalf of Forrest. Because both attorney and client attest to essentially the same facts, Par has failed to demonstrate

that Mulhearn's testimony is adverse to his client.

Finally, Par argues that Mulhearn's testimony will prejudice Forrest's case because it will illustrate Forrest's alleged "midcourse correction." The factual submissions on this motion, however, do not support this contention. Although Mulhearn's February 6 letter denies Par's allegations of improper conduct more directly than the unexecuted affidavit, the substance is basically the same—Forrest denies that the erroneous logbook entries were in his handwriting. Par's "midcourse correction" theory has no merit. *See Parke–Hayden, Inc.*, 794 F.Supp. at 528–29 (denying the defendant's disqualification motion, finding the defendant's allegations that testimony of the plaintiff's counsel would prejudice the plaintiff unsupported by any of the defendant's factual submissions).

### CONCLUSION

For the reasons stated, defendant's motion to disqualify is denied.

**SO ORDERED.**