**Humberto PASTOR, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

No. CV–96–2138.

United States District Court, E.D. New York.

Dec. 27, 1996.

Barbara T. R. Zimet, Grimes & Zimet, New York City, for Plaintiff.

Jean L. Schmidt, Israel E. Kornstein, Roberts & Finger, New York City, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant Trans World Airlines, Inc. ("TWA") moved for an order disqualifying plaintiff Humberto Pastor's counsel Barbara Zimet. For the reasons that follow, defendant's motion is granted.

### FACTS

On February 4, 1993, plaintiff Humberto Pastor lost his position as a Baggage Services Supervisor for TWA. Complaint ¶ 7. Sometime in 1994, Pastor retained attorney Barbara Zimet to represent him in an action alleging employment discrimination against TWA. Zimet Aff. ¶ 13. In July 1994, Pastor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and in connection with that charge, in the fall of 1994, Zimet exchanged telephone calls and correspondence with the in-house counsel staff at TWA. Zimet ¶¶ 13, 14. Zimet was familiar with in-house counsel staff procedures at TWA because she had been employed as a TWA staff attorney for nearly ten years from September 1976 until June 1986. Zimet mentioned this fact to TWA in-house staff attorney Alane C. Probst who was handling the Pastor case for TWA during the fall of 1994. Zimet Aff. ¶ 14.

Pastor was not the first client Zimet had represented against TWA after leaving it to go into private practice. In 1990, another former TWA employee had approached Zimet seeking representation. Zimet Aff. ¶ 8. Before she agreed to represent that client,

Zimet contacted Michael A. Katz, Esq., then Associate General Counsel in the TWA legal department. Zimet Aff. ¶ 9; Katz Aff. ¶ 1. Zimet told Katz that she intended to represent one TWA employee and perhaps two others, in connection with the negotiation of their severance packages. Katz Aff. ¶ 3. Zimet requested that TWA waive objection to her representation of them. Zimet Aff. ¶ 9.

Katz discussed Zimet's waiver request with Mark Buckstein, then TWA General Counsel, and then called Zimet again. Katz Aff. ¶ 3, 4. Katz attests:

> I informed Ms. Zimet that, after extensive internal discussions, TWA decided not to object to her representation of the one TWA employee, and perhaps the two others in connection with their severance packages. During the conversation, I stressed that TWA's 'waiver' was expressly limited to those three individuals and, with respect to each of them, that one matter.

Katz Aff. ¶ 4. Despite Katz's exhortation that "TWA's 'waiver' was expressly limited to those three individuals and . . . that one matter," when one of the three employees later filed an EEOC charge against TWA, Zimet continued to represent him. Zimet also represented that employee in a subsequent employment discrimination suit in federal court. Thereafter, Zimet represented another former TWA employee in the same federal employment discrimination suit. Katz Aff. ¶ 5. It appears from the evidence submitted by the parties that neither Zimet nor TWA raised the issue of a waiver in connection with this new client. Zimet's affidavit suggests, but does not explicitly state, that she understood the 1990 waiver to be generally applicable to any of her clients who might bring suit against TWA. Zimet Aff. ¶ 17. Katz attests that, with respect to the federal employment discrimination case

> both [plaintiffs'] claims fell within the scope of TWA's bankruptcy proceedings and, as a result, would not be handled as discrimination proceedings in the usual manner. TWA did not object to Ms. Zimet's representation of those two individuals, because, among other things there was

no risk of any violation of the confidences TWA entrusted to Ms. Zimet.

Katz Aff. ¶ 5.

In May 1996, several months after receiving a right to sue letter from the EEOC, plaintiff Pastor filed his complaint in this action alleging that defendant TWA discriminated against him on the basis of his age, disability and national origin and materially misrepresented his pension plan rights. Zimet Aff. ¶ 16; Complaint ¶ 4. TWA filed its answer on August 8 and on September 10, 1996, Zimet received a letter from Israel E. Kornstein, of the firm of Roberts & Finger, which stated in part:

> Dear Ms. Zimet: We represent the defendant Trans World Airlines, Inc. ("TWA") in [*Pastor v. Trans World Airlines, Inc.*, 96 Civ. 2138]. The purpose of this letter is to put you on notice that you are ethically prohibited from representing Mr. Humberto Pastor in this age, national origin and disability discrimination and ERISA action against TWA. . . . We urge you and your firm to withdraw as Mr. Pastor's counsel promptly, consistent with the mandates of the Code of Professional Responsibility and without compelling TWA to move for your disqualification. . . . [Through] mid–1986, you were employed by TWA as an attorney. During that time you provided legal advice to TWA in the employment area and, in that capacity, had access to confidential information and policies of TWA that are directly connected with issues pertaining to Mr. Pastor's lawsuit.
>
> Moreover, and most dramatically, this lawsuit in which Mr. Pastor charges TWA with "a continuing pattern and practice" of age and national origin discrimination, is not the first time that Mr. Pastor has charged TWA with age and national origin discrimination. In 1979, Mr. Pastor filed a complaint with the New York State Division of Human Rights and, in 1980, he filed a charge with the Equal Employment Opportunity Commission against TWA. You appeared as TWA's attorney in response to Mr. Pastor's employment discrimination

charges. A negotiated settlement was reached.

Kornstein Aff. ¶ 4, Ex. A.

In her affidavit, Zimet describes her reaction to this letter as follows:

> When I received the September 10, 1996 letter ... I was surprised and shocked to learn that plaintiff had filed a discrimination complaint against TWA in 1979 and that I had handled the matter for defendant. I had absolutely no recollection of this claim. Plaintiff had never informed me that he had filed a prior charge of discrimination with the EEOC.

Zimet Aff. ¶ 18. After discussion with her client, Zimet determined that she would not withdraw as counsel and as a result, TWA made this motion for her disqualification.

## DISCUSSION

### I.  Ethical Guidelines

██ A district court bears responsibility for the supervision of the members of its bar. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975). In the Second Circuit, district courts look to guidelines for professional conduct prescribed in the Code of Professional Responsibility (the "Code"), promulgated by the American Bar Association and adopted by the New York State Bar Association. *Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 666 (S.D.N.Y.1995). The Code is divided into Canons, Ethical Considerations and Disciplinary Rules.

> The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, the legal system and with the legal profession.... The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive.... The Disciplinary Rules ... are mandatory in character [and] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.

Code of Professional Responsibility, Preliminary Statement (29 McKinney 1992).

Canon 4 of the Code provides that a lawyer should preserve the confidences and secrets of a client. Ethical Considerations 4–1, 4–5 and 4–6 include the following recommendations:

> Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ the lawyer.
>
> \*     \*     \*     \*     \*     \*
>
> Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.
>
> \*     \*     \*     \*     \*     \*
>
> The obligation to protect confidences and secrets of a client continues after the termination of employment.

Disciplinary Rule 5–108 of the Code requires that:

> [e]xcept with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not: (1) Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client. (2) Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known.

Disciplinary Rule 4–101(C) permits a lawyer to reveal confidences or secrets of a client "with the consent of the client or clients affected, but only after a full disclosure to them."[1] Finally, Canon 9 of the Code provides that a lawyer should avoid even the appearance of professional impropriety.

### II.  Successive Representation Test

██ This motion raises the question of whether, in light of the guiding principles of

---

1. DR 4–101(C) also permits a lawyer to reveal confidences or secrets of a client under certain other limited circumstances not relevant to this case.

the Code, Zimet's prior representation of TWA makes her current representation of Pastor unethical. As the moving party, TWA bears the burden of proving that it is. *Stratavest Ltd. v. Rogers*, 903 F.Supp. at 666. Because disqualification motions are often filed for tactical reasons, courts generally require a high standard of proof before they will grant them. *Id.* On the other hand, because of the importance assigned to the observance of an attorney's ethical obligations, once a probable conflict is demonstrated, a court should resolve any doubts in favor of disqualification. *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226, 1239 (S.D.N.Y.1995). In deciding such a motion, a court must weigh a variety of competing interests including the nonmovants right to select the counsel of her choice, the movant's right to be "free from the risk of even inadvertent disclosure of confidential information and ... the public's interest in the scrupulous administration of justice." *Hull v. Celanese Corp.*, 513 F.2d at 570.

■ To prevail in its motion, TWA must demonstrate: (1) that TWA was Zimet's former client; (2) that there is a substantial relationship between the subject matter of Zimet's prior representation of TWA and the issues in the present lawsuit; and (3) that Zimet "had access to, or was likely to have had access to, relevant privileged information in the course of [her] prior representation of [TWA]." *Red Ball*, 908 F.Supp. at 1239. Zimet concedes that she formerly represented TWA, so the first element of the successive representation test is satisfied. Pl. Memo of Law, p. 8.

### i. Substantial Relationship

■ To prove that two cases are substantially related, TWA must demonstrate that "the relationship between issues involved in the prior and present cases is 'patently clear.'" *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir. 1978). Generally, this element is satisfied if central issues are common to both cases and if "the witnesses, testimony, and other evidence germane to one action are likely to be similar to the other." *Red Ball*, 908 F.Supp.

at 1244. Hence, for example, a court found two cases to be substantially related because both concerned the same defendant's alleged practice of fraudulently issuing inaccurate grain weight certificates, although the certificates were issued to different plaintiffs. *Cook Indus., Inc.*, 569 F.2d at 739. Similarly, a court found a substantial relationship between two cases dealing with the same parent corporation's control of its subsidiary and the alleged use of that control for illegal purposes. *Emle Indus. Inc. v. Glen Raven Mills, Inc.*, 478 F.2d 562, 571 (2d Cir.1973).

TWA has successfully demonstrated that the current action is substantially related to the discrimination proceedings Pastor initiated in 1979 and 1980. It has submitted, among other things, a 1979 TWA inter-office memorandum drafted by Zimet herself, in which she describes "the [1979] complaint filed by Mr. Pastor with the State Division of Human rights alleging that he was discriminated against because of his age (44) and national origin (Hispanic)." Kornstein Aff. ¶ 6, Ex. C. Likewise the current action alleges, among other things, that "[t]he termination of plaintiff's employment with defendant was part of a continuing pattern and practice of discrimination against older persons," complaint ¶ 43, and "part of a continuing pattern and practice of discrimination against certain minority groups, including but not limited to persons of Hispanic or Latin origin." Complaint ¶ 49. Clearly the same general issues of TWA employment policies are central to both actions. Moreover, the identity of issues here is unusually strong because the previous and current cases involve not only the same defendant, but also the same plaintiff. As a result, even the distinctive details of Mr. Pastor's employment history at TWA are relevant to both.

### ii. Access to Privileged Information

■ To satisfy the third element of the successive representation test, TWA must demonstrate that Zimet's "involvement in the prior case was such that [s]he would have had access to relevant privileged information." *Cook Indus., Inc.*, 569 F.2d at 740. Hence, disqualification is inappropriate if, for example, an attorney's association with a re-

lated matter was so peripheral and there was "no realistic chance that confidences were disclosed" to her. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 757 (2d Cir.1975) (overruled on other grounds by *Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir.1980) (en banc), vacated and remanded, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981)). Such is not the case here. Zimet concedes that she handled the 1979 and 1980 Pastor cases for TWA. Zimet Aff. ¶ 18. As such, Zimet may be presumed to have had access to privileged information.

Pastor attempts to rebut this presumption by arguing that the passage of time and intervening changes in TWA's corporate structure and management will have rendered obsolete any confidential information to which Zimet might have had access in the 1980s. Pl. Memo of Law, at pp. 9–10. Neither time nor structural change, however, have altered the details of Mr. Pastor's employment history at TWA before the mid–1980s, which will be relevant to Pastor's current case and was relevant to his previous case. Additionally, TWA submits the affidavit of Alane C. Probst, who affirms that although TWA has undergone extensive changes since 1986, "there have been no relevant changes in the policies of TWA that are directly connected with the issues pertaining to this lawsuit." Probst Aff. ¶ 7.

More importantly, however, even if Zimet had not represented TWA against Pastor, she would still be ethically barred from representing any client in any action substantially similar to the issues in the cases she handled as TWA's counsel. In her previous position as in-house counsel for TWA, in the course of her work on employment related issues, Zimet necessarily had access to privileged information about the policies and practices of TWA that she may now be able to use to the disadvantage of her former client. As Judge Leval of the Southern District of New York stated in the case of *Ullrich v. Hearst Corp,* 809 F.Supp. 229 (S.D.N.Y.1992), the rule against successive representation "concerns itself with the unfair advantage that a lawyer can take of his former client in using adversely to that client information communicated in confidence in the course of the representation." Such use "includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject" as well as innumerable other insights. *Ullrich,* 809 F.Supp. at 236.

In summary, because Zimet defended TWA in cases involving issues substantially related to this one and because she had access to privileged information concerning TWA, the terms of the successive representation test dictate that she should be disqualified from representing Pastor.

### III. Plaintiffs' Arguments Concerning Waiver and Laches

Pastor argues that even if TWA has shown that all the elements of the successive representation test are satisfied in this case, TWA waived its objection to Zimet's representation in 1990. As a result, Pastor argues that Zimet met her ethical obligations to TWA. Initially, Pastor contends that TWA may not object in this case, because it did not object the first time Zimet represented a former TWA employee in an employment discrimination suit against TWA, even though that client fell outside the explicit terms of the 1990 waiver. However, a party's failure to object to its former counsel's representation of one adverse party, without more, does not create an implied waiver of objections to that counsel's representation of all future adverse parties. *Ullrich,* 809 F.Supp. at 236.

Secondly, Pastor argues that defendant's motion should be denied because, although TWA knew in 1994 that Zimet once served as its counsel against Pastor, TWA delayed unreasonably by failing to move for her disqualification until 1996. It is true that a court may find an implied waiver if a party delays its disqualification motion unreasonably. *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir.1983). The submissions in support of and in opposition to this motion provide no basis for a finding that the motion was unreasonably delayed.

Pastor's case for an implied waiver is weakened by Zimet's failure to meet her ethical obligations to TWA under Disciplinary Rule 5–108. As TWA's former counsel, Zimet had the obligation to make full disclosure to TWA. Zimet was also obligated to make sure TWA waived its objection to her representation of TWA's former employee in a case substantially related to cases Zimet had handled for TWA. Though Zimet had forgotten her connection to Pastor, that oversight did not alter her obligation to obtain a waiver from TWA before she represented any former TWA employee in connection with an employment discrimination action.

Finally, Pastor's argument that TWA's motion should be barred by the doctrine of laches is unpersuasive. "In this circuit, laches is generally not a defense to a motion to disqualify." *British Airways, PLC v. Port Authority of New York and New Jersey*, 862 F.Supp. 889, 901 (E.D.N.Y.1994) (quoting *Baird v. Hilton Hotel Corp.*, 771 F.Supp. 24, 28 (E.D.N.Y.1991)). In any event, this motion cannot be said to have been unreasonably delayed and a claim of laches is baseless.

### CONCLUSION

Accordingly, for the reasons stated above, the defendant's motion should be granted.

SO ORDERED.