**STRATAVEST LTD., Joseph Chervin and Suzanne B. Chervin, Plaintiffs,**

v.

**Walter L. ROGERS, Basil Vasiliou, Belgrave Investment Trust N.V., St. Jean Financial, Inc., Vasiliou & Company, Inc., Cambridge Phase II Corp. and Triangle Acquisition Inc., Defendants.**

No. 94 Civ. 9305 (RWS).

United States District Court, S.D. New York.

Nov. 16, 1995.

Bobrow Greenapple Skolnik & Shakarchy, P.C., New York City, for Plaintiffs (Lawrence Greenapple and Peter O'Hanlon, of counsel).

Baer Marks & Upham, New York City, for Defendants Walter L. Rogers, Belgrave Investment Trust N.V., St. Jean Financial Inc. and Cambridge Phase II Corp. (Howard Graff, Edward S. Feig, and Daniel J. Friedman, of counsel).

Trachtenberg & Rodes, New York City (Leonard A. Rodes, of counsel) and Willkie Farr & Gallagher, New York City, for Defendants Basil Vasiliou and Vasiliou & Company, Inc.

Mazur, Carp & Rubin, P.C., New York City, for Defendant Triangle Acquisition Inc. (Gary L. Rubin, of counsel).

## OPINION

SWEET, District Judge.

Plaintiffs Stratavest Ltd. ("Stratavest"), Joseph Chervin ("Chervin") and Suzanne Chervin, moved for an order pursuant to Canons 4 and 9 of the ABA Model Code of Professional Responsibility and the New York Code of Professional Responsibility, disqualifying the law firm of Baer Marks & Upham ("BMU") from further representing the defendants Walter L. Rogers ("Rogers"), Belgrave Investment Trust, N.V. ("BIT"), St. Jean Financial, Inc. ("St. Jean") and Cambridge Phase II Corp. ("Cambridge") (collectively the "Rogers Defendants") in this action. For the reasons discussed below, the motion to disqualified is denied with leave to renew.

### Parties

The parties, facts, and prior proceedings in this matter were fully discussed in a prior opinion of this Court, familiarity with which is assumed. *See Stratavest Ltd. v. Rogers*, 888 F.Supp. 35 (S.D.N.Y.1995). They will be described below only to the extent necessary to decide the present motion.

Plaintiff Stratavest is a New York Corporation with its place of business in Roslyn, New York. Plaintiff Chervin is managing director of Stratavest. According to the complaint, Plaintiff Suzanne B. Chervin ("Suzanne") caused Stratavest to be organized in September of 1992 for the purpose of participating in a joint venture with defendants Rogers, BIT and St. Jean.

Defendant BIT is a foreign corporation doing business in New York with an office at 500 Park Avenue, New York, New York.

St. Jean is foreign corporation doing business in New York with a place of business at 500 Park Avenue, New York, New York. The complaint asserts that Rogers is a principal who manages its affairs and controls its activities.

VCI is a New York Corporation with its place of business at 600 Madison Avenue, New York, New York and Vasiliou is a principal who manages its affairs and controls its activities.

Cambridge is a foreign corporation doing business in New York which owns and operates an office in New York for Defendants Rogers, Vasiliou, VCI, and St. Jean.

### Prior Proceedings

The complaint alleges that Plaintiffs were fraudulently induced to part with time, information, professional skills and overhead in consideration of a share in a joint venture with Defendants whose object was to engage in profitable investments and transactions identified and developed by Plaintiffs and funded by Defendants. Plaintiffs alleged that the venture agreement provided that the respective profit shares of the participants were to be agreed upon in each instance. Plaintiffs allege that they worked on and brought to the Defendants over 100 opportunities and they know of six in which the Defendants placed funds. But, Defendants never agreed with Plaintiffs on their respective shares in the venture, paid Plaintiffs only $197,000 with respect to transactions involving many millions of dollars, and then, took for themselves all of the assets of the venture, and refused to account to, communicate with or otherwise deal with Plaintiffs as participants in the venture.

This motion was filed on August 3, 1995. Oral argument was heard on September 6, 1995, and the motion was considered fully submitted at that time.

Chervin alleges that he and Defendant Rogers engaged an attorney Anne Pitter ("Pitter") to represent them in their joint venture. It is the existence or non-existence of this joint venture that is at the crux of this lawsuit.

Chervin asserts that Pitter, once an associate of his at the law firm of Summit Soloman & Feldesman ("SSF"), an attorney with BMU, was retained by him in March 1993 to represent the joint venture. In that capacity, Chervin asserts that Pitter handled three matters for the joint venture, and that as Chervin was a principal in that joint venture, Pitter represented him. The three transactions involved Sports Heroes, Inc. ("Sports"), Sci–O–Tech Inc. ("Sci–O–Tech") and Triangle Sheet Metal Works, Inc. ("Triangle").

In March of 1993, Chervin contacted Pitter and informed her that he was involved in putting together an asset-based loan transaction. According to Pitter, Chervin introduced her to Rogers and Rogers in turn negotiated the terms of the retention. In view of Pitter's perception that Chervin was the middle-man for the deal, Pitter kept him informed of the status of her work and sent him copies of her bills which were paid by Sports. Pitter states that BIT was the client and that all decisions were made by Rogers.

The second investment for which BMU did legal work was the Sci–O–Tech transaction. According to Pitter, in February 1994 she was asked by Rogers to act as legal counsel to St. Jean, an entity that Rogers managed. She states that she later learned that Chervin was again acting as a middle-man although, unlike in the Sports transaction, she did not send Chervin copies of the bills because she did not think his role was significant.

St. Jean abandoned the Sci–O–Tech transaction before it closed.

Chervin asserts that in the latter part of 1992 he introduced Michael Doff ("Doff") to the Venture. Doff in turn introduced Rogers

and Chervin to Triangle. Chervin asserts that during 1993 he negotiated the acquisition of Triangle by the Venture and did substantial due diligence. He then asserts that in 1994 he learned that Rogers and Vasiliou were finalizing the deal with Triangle.

Pitter asserts that the Triangle deal contemplated by Rogers in 1994, for which she did legal work, was entirely different from the one being negotiated by Chervin in 1993. BMU was retained by BTI for work on the 1994 deal.

Chervin asserts that during the course of these transactions he communicated with Pitter concerning the venture and had confidential communications with her regarding his participation in the Venture and his concerns about Rogers and Rogers' attempts to shut Chervin out of the loop. Pitter denies these allegations. She states that she never represented Chervin, Stratavest, or any joint venture as alleged by Chervin.

### Discussion

The Code of Professional Responsibility (the "Code"), as promulgated by the American Bar Association, has been adopted by the New York State Bar Association as its own code of ethics. N.Y.Judiciary L. Appendix. The Code is recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar. *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976).

Canon 4 states that a "[l]awyer should preserve the confidences and secrets of a client." Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Disciplinary Rule 5–108 provides that "[e]xcept with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not ... [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety." N.Y.Judiciary L. Appendix.

■ Motions to disqualify opposing counsel are viewed with disfavor in this Circuit. *Clark v. Bank of New York*, 801 F.Supp. 1182, 1197 (S.D.N.Y.1992); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985) (collecting cases). The principal reason for this is that disqualification of counsel impinges on parties' rights to employ the counsel of their choice. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983). "The Court of Appeals [for the Second Circuit] has cautioned that motions to disqualify counsel ... can inflict serious harm on the party whose lawyer is disqualified ... 'for in disqualification matters we must be solicitous of a client's right freely to choose his counsel....'" *Ullrich v. Hearst Corp.*, 809 F.Supp. 229, 236 (S.D.N.Y.1992) (quoting *Evans*, 715 F.2d at 791).

Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted. *Evans*, 715 F.2d at 791; *Kubin v. Miller*, 801 F.Supp. 1101, 1112 (S.D.N.Y.1992); *Football League*, 605 F.Supp. at 1453.

■ All parties to the present action agree that a party seeking disqualification must prove that the moving party is a former client of an adverse party's counsel; that there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and that the adverse party's counsel had access to relevant privileged information. *Football League*, 605 F.Supp. at 1452; *Clark*, 801 F.Supp. at 1197.

■ In addition, in the context of a joint venture, the party seeking disqualification has the additional burden of proving that the attorney was in a position to receive confidences that the moving party reasonably could expect would not be disclosed to the attorney's present client. The courts refuse to disqualify the attorney of a former client if there is no indication that the attorney gained confidential information from that former client which can now be used against him in a substantially similar cause of action. *See Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977) ("an attorney may be disqualified

pursuant to Canon 4[1] if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation."); *First Hawaiian Bank v. Russell & Volkening, Inc.,* 861 F.Supp. 233, 238 n. 7 (S.D.N.Y.1994).

■ "Mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion" except in unusual circumstances. *Football League,* 605 F.Supp. at 1452; *New York Inst. of Tech. v. Biosound, Inc.,* 658 F.Supp. 759, 761 (S.D.N.Y.1987). Courts "are reluctant to rest disqualification of counsel solely upon Canon 9. Instead, courts generally require proof that another Canon has been violated." *Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 538 (S.D.N.Y. 1989) (citations omitted).

Assuming that this Court were to find that a joint venture exists, which it is not willing to do on this record, there has been no showing that Chervin had a reasonable expectation that secrets he told Pitter would be withheld from Rogers or the other Defendants that she represented.

■ The Court need not address this fourth factor, however, because the current record fails to establish that Chervin was Pitter's client. In order to determine whether an attorney-client relationship existed one must "look at the words and actions of the parties." *Hashemi v. Shack,* 609 F.Supp. 391, 393 (S.D.N.Y.1984). "Certain factors are highly relevant in ascertaining whether an attorney-client relationship has been formed. For example, although a fee arrangement is not necessary for the establishment of an attorney-client relationship, the absence of such an arrangement can be an indication that an attorney-client relationship never existed. (citations omitted) ... Additionally, although the so-called client's subjective belief can be considered by the court, ... this belief is not sufficient to establish an attorney-client relationship." *Kubin,* 801 F.Supp. at 1115.

■ In this case the only evidence of a contractual relationship are agreements and payments between Pitter and Defendant corporations or between Pitter and Rogers. Plaintiffs have put forward no evidence that Chervin was a direct party to the agreement. If Pitter was retained by Chervin, at all, it was as a principal of the alleged venture. As noted above, this raises the issue, as yet unproved, that there were confidences shared in the course of the relationship that would served to disqualify Pitter now.

■ Stratavest asserts that, even if DR5–108 is not determinative, BMU should be disqualified on the basis of DR5–101(C) and DR5–102(B), collectively referred to as the "advocate-witness rules." Disqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the "strong potential for abuse" when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel. *Russo v. Friedman,* 1992 WL 196791 (S.D.N.Y. July 31, 1992); *Parke–Hayden, Inc. v. Loews Theatre Management Corp.,* 794 F.Supp. 525, 527 (S.D.N.Y.1992).

■ In order to disqualify Pitter on the basis of the advocate-witness rules, Stratavest must demonstrate that Pitter's testimony is necessary, and that this testimony is substantially likely to be prejudicial to Defendants. *Parke–Hayden,* 794 F.Supp. at 527.

■ A finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary. *S & S Hotel Ventures L.P. v. 777 S.H. Corp.,* 69 N.Y.2d 437, 515 N.Y.S.2d 735, 739, 508 N.E.2d 647, 651 (1987). In cases where the lawyer's testimony is highly relevant and solely within her possession, it is apparent that she must be disqualified. *Wickes v. Ward,* 706 F.Supp. 290, 292–93 (S.D.N.Y.1989); *Paretti v. Cavalier Label Co.,* 722 F.Supp. 985, 986 (S.D.N.Y.1989) ("if a lawyer negotiates, executes and administers a contract, and is the key witness at trial, then he must be disqualified.")

---

1. Canon 4 provides that "[a] lawyer should preserve the confidences and secrets of a client."

While it is possible that Pitter's testimony may be necessary, it is too early at this point in the proceeding to determine that. There may be other witnesses to the transactions who can provide sufficient evidence on the nature of the relationship between Plaintiffs and Defendants. Under the Model Rules of Professional Conduct and New York's Code of Professional Responsibility, vicarious disqualification of a firm when one of its associates is disqualified pursuant to the witness rule, is no longer necessary. *See Kubin,* 801 F.Supp. 1101, 1113. Having failed to demonstrate that Pitter is a necessary witness, there is no reason to consider the disqualification of BMU at this time, except to note the apparent distance between Pitter and the litigation team in this action. Particularly in light of the failure to attribute a relationship of attorney-client confidences between Pitter and Chervin, it seems unlikely that the entire firm would have to be disqualified.

### Conclusion

For the reasons stated above the motion to dismiss Defendant's counsel is denied at this time, with leave to renew, if appropriate.

The parties shall complete all discovery, inspection and motions by January 3, 1996. The parties will submit to the court trial briefs, a joint proposed pretrial order and if applicable proposed jury charges and voir dire requests in conformance with prior scheduling orders by January 17, 1996. A final pretrial conference will be held at 4:30 on that date and the action shall be added to the trial calendar published in the New York Law Journal. All other portions of the June 9, 1995 order remain in effect.

This Opinion resolves the motion filed by Plaintiffs on August 3, 1995 (Document # 24).

It is so ordered.