Donald G. **GLEASON**, Plaintiff,

v.

Helen T. **ZOCCO**, Individually and as President, Civil Service Employees Association, Dutchess County Local 814 of Civil Service Employees Association, Civil Service Employees Association, Incorporated, Local 1000, American Federation of State, County and Municipal Employees, Defendants.

No. 96 Civ. 3209 (JSR).

United States District Court, S.D. New York.

Sept. 27, 1996.

Carl A. Mathison, Poughkeepsie, NY, for plaintiff.

Nancy E. Hoffman, Albany, NY by William A. Herbert, Robert Reilly, for defendants.

## OPINION AND ORDER

RAKOFF, District Judge.

Before the Court is the motion of the defendants to disqualify Carl A. Mathison, III, the attorney for the plaintiff. On July 3, 1996, after reviewing the motion papers and hearing oral argument, the Court reserved decision on the motion. Having now fully considered the submissions of the parties and the applicable precedents, the Court grants the motion.

### Background

Prior to entering the legal profession, Mr. Mathison was employed by Dutchess County as a probation officer and was an active member of the Dutchess County unit of the Civil Service Employees Association ("CSEA"), a defendant in this case. Indeed, from 1986 to 1989, Mr. Mathison served as the elected president of the Dutchess County unit of CSEA. During the same period, Mr. Mathison's close friend, Donald G. Gleason, the plaintiff here, served as the treasurer of the same unit. In 1989, a slate headed by defendant Helen Zocco defeated Mathison and Gleason in their respective bids for re-election.

Even before that election, Mr. Mathison and Ms. Zocco had a rancorous relationship that Mr. Mathison described as being "legendary within CSEA and within Dutchess County." *See* Ex. E to Affidavit of William A. Herbert, sworn to June 18, 1996. Subsequent to the election, in January of 1991, Ms. Zocco wrote a letter to Mr. Mathison's supervisor, stating her belief that Mr. Mathison was responsible for the widespread circulation to Dutchess County employees of a newspaper report that Ms. Zocco had been arrested for drunken driving. Herbert Aff., Ex. F. An investigation was undertaken by Dutchess County that resulted in an official warning to Mr. Mathison that using County time for personal and political activities was not part of his job and that any singling out of a County employee for disparagement would meet with formal disciplinary action. Herbert Aff., Ex. G. Shortly thereafter, Mr. Mathison was transferred to another office against his wishes, and in November of 1991, he resigned from his County employment to concentrate on his law school studies.

Meanwhile, Mr. Mathison filed a libel action against Ms. Zocco in New York State Court, predicated on the statements made by Ms. Zocco in her letter to Mr. Mathison's supervisor. Herbert Aff., Ex. F. During his deposition taken in that lawsuit, Mr. Mathison testified that the person responsible for the widespread distribution of the newspaper article about Ms. Zocco was not himself but the plaintiff here, Mr. Gleason.

Against this background, Mr. Gleason, represented by Mr. Mathison, brings this action to recover damages for alleged "ongoing violations of the First Amendment of the United States Constitution" and "repeated, multiple violations of the Labor–Management Reporting and Disclosure Act (LMDRA), including but not limited to violations of the Union Members Bill of Rights, LMDRA § 101 and LMDRA §§ 501 and 609." Complaint ¶ 7. More specifically, the Complaint, which Mr. Mathison drafted, alleges three causes of action.

The first concerns a so-called "agency shop" provision that requires employees who decline (or terminate) membership in CSEA to nonetheless pay to CSEA a fee that is equal to the dues paid by union members. *Id.* at ¶ 9. Part of the money raised through the assessment of such agency shop fees is used to support political parties, candidates for public office, and legislative agendas. *Id.* The Complaint asserts that the agency shop fee thereby violates the First Amendment.

Plaintiff's second cause of action relates to a political action fund that is maintained by CESA and used to support lobbying and political activities. *Id.* at ¶ 10. This political action fund is financed by mandatory payroll deductions equaling three percent of each employee's union dues or agency shop fees. *Id.* While union members and agency shop fee-payers who do not wish to contribute to the political action fund can seek refund of their deductions, the refund process is both onerous and little-known. *Id.* at ¶ 11–12. Plaintiff challenges the mandatory payroll deduction as being violative of the First Amendment and claims that the refund procedure does not cure the unconstitutionality of the forced political contributions.

Before turning to the third claim, it should be noted that, with respect to the first two causes of action, defendants assert that Mathison has a conflict of interest because, as unit president, he negotiated contracts with agency shop provisions and mandatory payroll deductions identical to those challenged by Gleason in this suit. Def.Mem., at 3, 12–13. Therefore, defendants claim, Mathison is a necessary witness to their defense of the propriety of these provisions.

Mathison responds that the collective bargaining agreement at issue in this suit was signed in 1991, after he left the union. He adds that although as union president he was a signatory to a prior collective bargaining agreement containing similar terms, those particular provisions were dictated by higher-level officials in CSEA. Affidavit of Carl A. Mathison, III, sworn to June 25, 1996, at ¶¶ 15–17.

Further, at oral argument, Mr. Mathison stated:

In this action, by the way, we are not challenging any expenditures of funds. We are challenging the manner in which they are raised and the opportunity that is afforded Mr. Gleason and other union members to opt out of supporting political candidates they don't agree with, or political agendas they don't agree with, or, for that matter, opting out, as complainant is able to do, of union membership and paying only for the cost of representation.

Tr. 38. That statement, however, is arguably inconsistent with the third cause of action, which, inter alia, contains a specific allegation that Ms. Zocco misapplied this funding toward the defense of the libel suit brought against her by Mr. Mathison:

From December, 1991 through the present, defendant CSEA, Inc. has provided defendant Zocco with legal representation to defend a civil suit filed against her by an aggrieved union member.

Complaint ¶ 19. Mr. Mathison does not dispute that the "aggrieved union member" here referred to is himself.

More generally, the third cause of action alleges specific acts of wrongdoing by Ms. Zocco in violation of the LMRDA, including accepting improper gifts and payments, improperly refusing to hear a grievance filed by the plaintiff, retaliating against the plaintiff for his political alliances, etc. In addition to the allegation in Paragraph 19 quoted above, the third cause of action includes at least two other allegations that directly refer to Mathison. Thus, paragraph 15 alleges:

Defendant Zocco's refusal is in retaliation for Mr. Gleason's former involvement in union politics, including his having held office as part of a group opposed to defendant Zocco, and his friendship with and support for a former political adversary of defendant Zocco, and his comment on and criticism of certain union issues and of defendant Zocco as a union official.

Complaint ¶ 15. The "political adversary" referred to is Mr. Mathison. Likewise, paragraph 18 alleges that:

In January, 1991, defendant Zocco placed herself in an adversarial relationship to the Local by soliciting the aid of a manager of the employer to discipline the immediate past president of the union.

Complaint ¶ 18. The "past president" is, again, Mr. Mathison, and the reference is to Ms. Zocco's having sent the letter that forms the basis of Mr. Mathison's state court libel action.

Accordingly, defendants argue that Mathison not only is a necessary witness but also is personally interested in this lawsuit. Mr. Mathison responds by suggesting that the

Complaint can be amended to omit the references to himself. But in Mr. Gleason's Affidavit submitted in response to the instant motion there is no statement that he wishes his Complaint to be so amended; and the representation made by Mr. Mathison at oral argument that Mr. Gleason had told him that he would be prepared to delete these allegations if it were necessary to keep Mathison as his counsel only highlights the potential conflict, as discussed below.

### Discussion

At the outset, the Court notes that motions to disqualify opposing counsel are viewed with disfavor in this District. *See, e.g., Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 666 (S.D.N.Y.1995); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985). Moreover, " '[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion' except in unusual circumstances." *Stratavest*, 903 F.Supp. at 667 (quoting *Football League*, 605 F.Supp. at 1452). Still, as the Court of Appeals has noted, the issue remains one of balancing competing considerations; for while "in disqualification matters we must be solicitous of a client's right freely to choose his counsel, [that] right ... of course must be balanced against the need to maintain the highest standards of the profession." *Government of India v. Cook Indus.*, 569 F.2d 737, 739 (2d Cir.1978).

These standards are articulated, in the first instance, in the Code of Professional Responsibility promulgated by the American Bar Association, as adopted (and slightly modified) by the New York State Bar Association. "The Code is recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar." *Petroquimica De Venezuela, S.A. v. M/T Trade Resolve*, 847 F.Supp. 1177, 1179 (S.D.N.Y. 1994) (citing *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976)).

The Court, after examining the pertinent provisions of that Code, and especially Canons 4, 5, and 9, concludes that Mr. Mathison's extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit require his disqualification, both because of the likelihood that he will be a necessary witness and because of the real and present danger that his personal interests will infringe on his professional representation in ways deleterious to his client.

The Court notes that Mr. Mathison's own statements at oral argument served, if anything, to highlight the problem. Without his client present, he volunteered the following conversation he had had with his client regarding defendant's motion:

> And I asked [Mr. Gleason], because I went over the complaint, and I realized if I had it to draft over again, I would have talked to Mr. Gleason about rewording it and leave out that which did specifically refer to me in the past, just to avoid this issue.

> Mr. Gleason's instructions were: "Carl, I want you as my attorney. If you want to take it out, you think it will help with that particular paragraph, do it. The only thing I want, I don't want to ever go without my complaint about my grievance and my complaint about the way they take my money and don't give me a choice. If you need to change something else, I trust you; please tell me."

Tr. 22–23. The inference is unmistakable that it was Mathison, not Gleason, who was the original progenitor of the allegations in the Complaint that directly refer to Mathison, and that Mathison, having previously advised Gleason that these were valid allegations helpful to Gleason's cause, is now utilizing Gleason's trust to withdraw them in order to maintain his own position as counsel.

This is only one example of the numerous respects in which it is obvious from the facts set forth above that Mr. Mathison's unique personal interest in this case presents an endless parade of likely conflicts of interest compelling disqualification. But even if this were not true, the Court would still grant the motion to disqualify on the basis that Mr. Mathison is a necessary witness at the trial of this case. *See Lamborn v. Dittmer*, 873 F.2d 522, 530–31 (2d Cir.1989); *Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 165–66 (W.D.N.Y.1994). On the first two causes of

action, his testimony would at a minimum be significantly useful to the defendants, placing him in a direct conflict with his client. *See* Disciplinary Rule 5–102(B). On the third cause of action, his testimony would seemingly be vital to his client, likewise compelling disqualification. *See* Disciplinary Rule 5–102(A). Moreover, Mr. Mathison's statement that he and his client have agreed not to call him to the stand merely serves, once again, to highlight the conflict. Indeed, it is for this very reason that the Court of Appeals has determined that a lawyer should be disqualified if his testimony could be significantly useful to his client "regardless of whether he will actually be called," *Lamborn*, 873 F.2d at 531.

Finally, while the facts of this case would compel disqualification at any stage of the litigation, the Court notes that this motion was brought immediately after the action was commenced, and that discovery has been stayed pending its resolution. Accordingly, the prejudice to plaintiff of having to change counsel at this stage of the proceeding—and the "tactical advantage" to the defendant—are insignificant.

For the foregoing reasons, the motion to disqualify Carl A. Mathison III as the attorney for plaintiff Donald Gleason is hereby granted.

SO ORDERED.