Muhammad **SHABBIR**, Plaintiff,

v.

**PAKISTAN INTERNATIONAL AIRLINES,** Defendant.

No. 99 CV 5601(CLP).

United States District Court, E.D. New York.

Dec. 19, 2005.

**302**

Muhammad Shabbir, Woodside, NY, pro se.

Mumtaz Alvi, Alvi & Alliance, New York, NY, Theodore L. Blumberg, Marvin I. Barish Law Offices, Philadelphia, PA, for Defendant.

*MEMORANDUM AND ORDER*

POLLAK, United States Magistrate Judge.

On September 13, 1999, Muhammad Shabbir, proceeding *pro se*, filed this action against defendant Pakistan International Airlines ("PIA"), alleging that he was wrongfully terminated from his employment at PIA, in violation of the First Amendment, based on various political statements he made regarding certain Pakistani government officials. By Motion dated June 15, 2004, plaintiff moves to disqualify the firm of Alvi & Alliance (the "Firm") from representing defendant PIA in this action for several reasons, including: 1) the role of Mumtaz H. Alvi, Esq. ("Alvi") as a material witness in the case; 2) legal advice given to plaintiff by Mr. Alvi; and 3) alleged professional misconduct on the part of Mr. Alvi and Theodore L. Blumberg, Esq. ("Blumberg"), another attorney for defendant PIA.[1]

For the reasons set forth below, this Court denies plaintiff's motion for disqualification.

*FACTUAL BACKGROUND*

Plaintiff Shabbir alleges that he was hired by PIA on April 12, 1995 to work at New York's John F. Kennedy International Airport ("JFK") as Protocol Manager of the Customer Services department. (Am. Compl.[2] ¶ 8). Plaintiff asserts that he is "a strong supporter of [the] Pakistan Peoples Party," a political party founded in Pakistan by the late Zulfikar Ali Bhutto. (*Id.* ¶ 12A). Plaintiff alleges that after General Muhammad Zia–ul–Haq assumed power in Pakistan in 1977, plaintiff organized a group in America aimed at the

---

1. Mr. Blumberg, who was associated with the Firm at the time this litigation was commenced, is now with the law firm of Marvin I. Barish Law Offices.

2. Citations to "Am. Compl." refer to plaintiff's amended complaint, submitted on December 6, 1999.

restoration of democracy in Pakistan. (*Id.* ¶ 12B). Plaintiff alleges that in connection with this group, he made public speeches and met with various United States politicians to garner support for his group, known as "PPP USA." [3] (*Id.* ¶¶ 12B, C). Later, when Benazir Bhutto became Chairperson of the Pakistan Peoples Party in 1979, plaintiff alleges that he began publicly supporting her efforts, organizing protest rallies, receiving news coverage, and becoming "very popular among the Pakistani community in America." (*Id.* ¶¶ 12D, F, G). Plaintiff states that he "was known as the main political figure opposing military rule." (*Id.* ¶ 12G).

When Mian Nawaz Shareef became Prime Minister of Pakistan in 1990, plaintiff alleges that he "oppos [ed] the corrupt regime of Mian Nawaz Shareef" and engaged in political action to "expos[e] [Shareef's] bad deeds." (*Id.* ¶¶ 12Q, T). Plaintiff alleges that he was warned repeatedly by the General Manager and the Chairman of PIA to stop his anti-Shareef propaganda. (*Id.* ¶¶ 12U, W). Plaintiff alleges that in May 1997, Benazir Bhutto visited New York, where she nominated plaintiff to be a senior member of a committee against the Shareef government. (*Id.* ¶ 12Y). Plaintiff claims that due to his political advocacy with this committee, he was terminated from his employment at PIA in August of 1997. (*Id.* ¶ 12Y; Ex. E).

Plaintiff further alleges that after his termination from PIA, he went to the General Manager's office to collect his vacation and sick leave. (*Id.* ¶ 16). He alleges that he was asked to sign a release in exchange for his pay, in which he agreed not to sue PIA. (*Id.*) When plaintiff refused to sign the release and wrote a letter threatening

suit, PIA allegedly paid plaintiff his money. (*Id.* ¶ 17).

Plaintiff Shabbir now moves to disqualify the firm of Alvi and Alliance as trial counsel to PIA in this action, arguing that Mr. Alvi has knowledge and information about Mr. Shabbir and about PIA's decision to terminate Mr. Shabbir that make Mr. Alvi a critical witness in the case. (Pl.'s Mem.[4] at 4). In addition, plaintiff asserts that Mr. Alvi's representation of PIA violates the federal and New York Codes of Professional Responsibility in that Mr. Alvi gave legal advice to Mr. Shabbir, whose interest is now adverse to that of Mr. Alvi's current client, PIA. (*Id.*) Finally, plaintiff alleges that both Mr. Alvi and Mr. Blumberg, another attorney with the Firm, have engaged in professional misconduct during the course of this case. (*Id.* at 1–4).

## DISCUSSION

### A. Standards for a Motion for Disqualification

■ A district court has the authority and responsibility to supervise attorneys admitted to practice before it, and to uphold the applicable ethical precepts of the district in which it sits. *See In re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (stating that "[f]ederal courts admit and suspend attorneys as an exercise of their inherent power"); *see also Pastor v. Trans World Airlines, Inc.,* 951 F.Supp. 27, 30 (E.D.N.Y.1996) (Glasser, J.) (stating that a "district court bears responsibility for the supervision of the members of its bar"). It is well established that the Court's authority to disqualify an attorney stems from its general supervisory power over the attorneys ap-

---

**3.** "PPP USA" stands for Pakistan Peoples Party, USA.

**4.** Citations to "Pl.'s Mem. at" refer to plaintiff's memorandum of law submitted on June 15, 2004.

pearing before it, *see United States v. Hammad,* 846 F.2d 854, 857–58 (2d Cir. 1988), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990) (noting that the "federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar"); *Handelman v. Weiss,* 368 F.Supp. 258, 263 (S.D.N.Y.1973), and the determination of disqualification is discretionary in nature. *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975); *see also In re Osage Exploration Co.,* 104 F.R.D. 45, 48 (S.D.N.Y.1984). There is a longstanding rule that:

> "[w]hen dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent."

*Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 227 (2d Cir.1977) (quoting *United States v. Standard Oil Co.,* 136 F.Supp. 345, 367 (S.D.N.Y.1955)). Indeed, as the court in Fund of Funds noted, "in deciding questions of professional ethics men of good will often differ in their conclusions." 567 F.2d at 227.

█ Motions for disqualification, such as the one presently pending before this Court, require the Court to "preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 564–65 (2d Cir.1973); *see also United States v. Cunningham,* 672 F.2d 1064, 1071 (2d Cir. 1982), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). In considering plaintiff's motion for disqualification,

this Court is mindful of its responsibility to supervise the members of its bar, *see Fund of Funds Ltd. v. Arthur Andersen & Co.,* 567 F.2d at 237 (noting that "above all else, we must maintain public trust in the integrity of the Bar"), and recognizes the admonition of the Second Circuit that "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d at 571; *see Baird v. Hilton Hotel Corp.,* 771 F.Supp. 24, 27 (E.D.N.Y.1991) (Amon, J.) (holding that " 'if there were any doubt as to the propriety of our action, we would resolve it in favor of disqualification' ") (quoting *Cheng v. GAF Corp.,* 631 F.2d 1052, 1059 (2d Cir.1980), *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981)).

█ However, the disqualification of an attorney upon the motion of an adversary is a serious sanction that ought not be imposed lightly. It is well-established that courts in the Second Circuit view motions for disqualification with "fairly strict scrutiny" and that disqualifications are generally disfavored. *See Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989); *accord Ragdoll Prods. (UK) Ltd. v. Wal–Mart Stores, Inc.,* No. 99 CV 2101, 1999 WL 760209, at *1 (S.D.N.Y. Sept.27, 1999) (noting that motions to disqualify are "subject to strict scrutiny"); *see also Stratavest Ltd. v. Rogers,* 903 F.Supp. 663, 666 (S.D.N.Y.1995) (stating that "[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit"); *United States Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985) (same). Indeed, courts have become increasingly "skeptical of motions to disqualify counsel, and they now approach them with cautious scrutiny." *Laker Airways Ltd. v. Pan Am. World Airways Ltd.,* 103 F.R.D. at 28. The Second Circuit has "been loathe to separate a client from his chosen attorney," *In re Bohack*

*Corp.,* 607 F.2d 258, 263 (2d Cir.1979), as "[d]isqualification has a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey,* 466 F.Supp. 722, 724 (E.D.N.Y.1979) (Weinstein, J.). However, the client's right to choose his counsel " 'must be balanced against the need to maintain the highest standards of the profession.' " *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983) (quoting *Gov't of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978)).

Moreover, "[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are 'often interposed for tactical reasons' " *Bennett Silvershein Assoc.'s v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991) (citing *United States Football League v. Nat'l Football League,* 605 F.Supp. at 1452 (collecting cases)); *Laker Airways Ltd. v. Pan Am. World Airways,* 103 F.R.D. at 28 (noting that "[d]isqualification motions have become increasingly popular tools of the litigation process, being used ... for purely strategic purposes") (internal quotations omitted). At least one court has commented that "[d]isqualification motions are subject to abuse for tactical purposes," often resulting in "complex satellite litigation extraneous to the case." *Universal City Studios, Inc. v. Reimerdes,* 98 F.Supp.2d 449, 455 (S.D.N.Y.2000); *see also Evans v. Artek Sys. Corp.,* 715 F.2d at 790 (noting that " 'even when made in the best of faith, such motions inevitably cause delay' ") (quoting *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)).

■■ The Court of Appeals has cautioned courts not to grant motions to disqualify counsel indiscriminately. *See Bd. of Educ. v. Nyquist,* 590 F.2d at 1246. Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir.1981); *see United States Football League v. Nat'l Football League,* 605 F.Supp. at 1452 (stating that a motion to disqualify "will be granted only if the facts present a real risk that the trial will be tainted"). Such a risk exists when "the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter," *Universal City Studios, Inc. v. Reimerdes,* 98 F.Supp.2d at 455, or when "there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor." *Id.* The "guiding principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings." *United States Football League v. Nat'l Football League,* 605 F.Supp. at 1464.

■ While the courts have made it clear that any doubts should be resolved in favor of disqualification, *see Cheng v. GAF Corp.,* 631 F.2d at 1059; *Hull v. Celanese Corp.,* 513 F.2d at 571, the burden nonetheless lies on the party arguing for disqualification to demonstrate that continued representation by the challenged attorney would result in serious prejudice. *See Ragdoll Prods. (UK) Ltd. v. Wal–Mart Stores, Inc.,* 1999 WL 760209, at *2; *Stratavest Ltd. v. Rogers,* 903 F.Supp. at 667.

■■ The standard of professional conduct in federal courts is a matter of federal law. *In re Snyder,* 472 U.S. at 645 n. 6, 105 S.Ct. 2874. Thus, attorneys practicing in this jurisdiction must follow the standards set forth in the American Bar Association's Model Code of Professional Responsibility ("ABA Code"). *See NCK Org. Ltd. v. Bregman,* 542 F.2d 128, 129 n. 2 (2d Cir.1976) (noting that the ABA Code "is recognized ... in this circuit as pre-

scribing appropriate guidelines for the professional conduct of the bar"). In addition, attorneys practicing in federal court are charged "with the knowledge of and the duty to conform to the state code of professional responsibility." *In re Snyder,* 472 U.S. at 645, 105 S.Ct. 2874. Thus, "the Second Circuit is guided, although not bound, by the New York Code of Professional Responsibility." *United States v. Locascio,* 357 F.Supp.2d 536, 553 (E.D.N.Y.2004) (Amon, J.). The New York Code is modeled in pertinent part on the ABA Code. *Stratavest Ltd. v. Rogers,* 903 F.Supp. at 666 (citing N.Y. Jud. L.App.). The Eastern District of New York notes the attorney's obligation to comply with these standards of conduct. *See* Local Rules of the Southern & Eastern Districts of New York, Rule 1.5(b)(5).[5]

"Courts have traditionally looked to the Code in determining disqualification motions." *Int'l Union, UAW v. Nat'l Caucus of Labor Comm.,* 466 F.Supp. 564, 566 (S.D.N.Y.1979); *see also United States v. Locascio,* 357 F.Supp.2d at 553. The Code sets forth a variety of ethical considerations, canons, and disciplinary rules to be followed by all attorneys. Under the Code, "[t]he Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *Int'l Union, UAW v. Nat'l Caucus of Labor Comm.,* 466 F.Supp. at 566 (citations omitted). While Disciplinary Rules are mandatory, Ethical Considerations and Canons are hortatory or recommended. Thus, violation of ethical considerations or canons do not require disciplinary action. *See, e.g., Pastor v. Trans World Airlines, Inc.,* 951 F.Supp. at 30.

### B. *Witness—Advocate Rule*

Mr. Shabbir has moved to disqualify defendant's counsel, arguing that given Mr. Alvi's knowledge of plaintiff's political stance and his role in the plaintiff's termination, Mr. Alvi ought to be called as a witness in this case.

First, plaintiff claims that, as a political leader and community activist within the Pakistan Peoples Party, plaintiff was well known in the Pakistani community in the United States. (Pl.'s Mem. at 4). He contends that Mr. Alvi, PIA's General Counsel, belonged to the same community, and thus has knowledge of plaintiff's political views. (*Id.*) Plaintiff asserts that Mr. Alvi should be called as a witness to testify about plaintiff's views. (*Id.*)

Plaintiff further alleges that at the time he was terminated from PIA, he was given a special "release document" which he refused to sign. (*Id.*) He claims that the special release form was drafted by Mr. Alvi specifically for plaintiff. (*Id.*) Since defendant denies that such a special form was prepared for plaintiff, plaintiff seeks to call Mr. Alvi as a witness to confirm that the document was written and prepared by him. (*Id.*)

Finally, plaintiff alleges that he used to talk with Mr. Alvi about what plaintiff should do if he was terminated from PIA (Am.Compl.¶ 25), and that Mr. Alvi gave him legal advice after he was terminated from PIA. (Pl.'s Mem. at 4). He states that he therefore intends to call Mr. Alvi to testify as an interested witness. (*Id.*)

In response, Mr. Alvi has submitted a declaration stating that he was "unaware of [Mr. Shabbir's] political inclinations and activities." (Alvi Decl. ¶ 8). He admits knowing of plaintiff "in passing" while

---

**5.** The most current version of the Local Rules may be found at the web address http://artemis.n yed.circ2.dcn/dc/Local_Documents/local-rules.pdf.

plaintiff worked at PIA's JFK Airport office. (*Id.* ¶ 5).

With respect to the release form, Mr. Alvi asserts his belief that plaintiff was offered a standard release form. (*Id.* ¶ 3). Mr. Alvi represents that he never drafted a special form for plaintiff, nor is he aware of any other PIA official who offered plaintiff a special release form. (*Id.* ¶ 4). The Firm also submitted a letter from Mr. Blumberg and an affidavit from Ismat Haider, Legal Coordinator for PIA, which support Mr. Alvi's assertion. (Blumberg Ltr.[6] at 1; Haider Aff.[7] at 1). Mr. Haider's affidavit states "to the best of my knowledge, the release Mr. Shabbir seeks does not exist and has never existed at PIA." (Haider Aff. at 1). According to Mr. Alvi, plaintiff refused the severance and refused to sign the release. (Alvi Decl. ¶ 3). Thus, the actual copy of the release given to plaintiff cannot be produced.

Mr. Alvi also asserts that he played no role in the decision to terminate plaintiff. (*Id.* ¶ 6). He concedes that he has no reason to disbelieve plaintiff's claim that the two spoke after plaintiff's termination, but he asserts that he has no recollection of the conversation. (*Id.* ¶ 7). He contends, however, that "as a matter of habit and training, I avoid acting contrary to my client's interests." (*Id.*) Thus, he asserts that he never advised plaintiff to sue PIA, nor does he recall giving plaintiff any legal advice. (*Id.*)

### 1. *Standards*

It is clear that Mr. Shabbir bears the burden of proof on this motion for disqualification, *see Rosman v. Shapiro*, 653 F.Supp. 1441, 1445 n. 5 (S.D.N.Y.1987) (noting that the burden is on the moving party to establish the need for disqualification). In this case, he has failed to sustain that burden.

Disciplinary Rule 5–102(A) of the ABA Code of Professional Responsibility and Disciplinary Rule 5–102(c) of the New York Code of Professional Responsibility govern when a lawyer, who may be called as a witness, should withdraw from further representation of his client. The ABA Disciplinary Rule states that "[i]f ... a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial." ABA Code of Prof. Responsibility, DR5–102(A). Similarly, under the New York Code of Professional Responsibility, if "a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal." N.Y.Code of Prof. Responsibility, D.R.5–102(c) (1999) (codified at 22 N.Y. Comp.Codes R. & Reg. § 1200.21 (2004)). In addition, where "a lawyer learns or it is obvious that the lawyer ... may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer ... must withdraw from acting as an advocate before the tribunal." *Id.*; N.Y.Code of Prof. Responsibility, D.R.5–102(d).

The lawyer-witness disciplinary rule was developed out of a strong concern that calling a party's lawyer as a witness in a case would "undermine[ ] the integrity of the judicial process." *See MacArthur v.*

---

**6.** Citations to "Blumberg Ltr." refer to the letter submitted by Theodore Blumberg, Esq., on November 5, 2002.

**7.** Citations to "Haider Aff." refer to the affidavit of Ismat Haider, signed on November 12, 2002.

*Bank of N.Y.*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981). The rule is designed to protect the adverse party, as the "jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight." *Id.; see also Int'l Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1295 (2d Cir.1975). It is also designed to avoid the possibility that "the public might think that the lawyer (as witness) is distorting the truth for the sake of the client." *Int'l Electronics Corp. v. Flanzer*, 527 F.2d at 1295; *see also Fulfree v. Manchester*, 945 F.Supp. 768, 770 (S.D.N.Y.1996) (discussing disciplinary rule).

When there is a question as to whether an attorney will be called as a witness on behalf of his or her client, "any doubt is to be resolved in favor of disqualification" and in favor of allowing the attorney to testify. *Hull v. Celanese Corp.*, 513 F.2d at 571; *see also Clark v. Bank of N.Y.*, 801 F.Supp. 1182, 1197 (S.D.N.Y. 1992); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1083 (S.D.N.Y.1989). However, a disqualification motion premised upon the lawyer-witness rule is subject to "strict scrutiny because of the 'strong potential for abuse.'" *Stratavest Ltd. v. Rogers*, 903 F.Supp. at 667 (quoting *Russo v. Friedman*, No. 91 CV 6913, 1992 WL 196791, at *9 (S.D.N.Y. July 31, 1992)); *see also United States v. Locascio*, 357 F.Supp.2d at 553. The party seeking disqualification must demonstrate that the testimony of the attorney subject to disqualification is both necessary and substantially likely to be prejudicial to the interests of the movant at trial. *See, e.g., United States v. Locascio*, 357 F.Supp.2d at 553. On occasion, as in *Stratavest Ltd. v. Rogers*, where it is unclear whether an attorney's testimony will, in fact, be necessary, the motion to disqualify should be dismissed in the ab-

sence of clear prejudice to the moving party. *Stratavest Ltd. v. Rogers*, 903 F.Supp. at 668.

The testimony of an attorney at trial is considered prejudicial if "it is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting" the testimony. *Paramount Commc'ns, Inc. v. Donaghy*, 858 F.Supp. 391, 395 (S.D.N.Y.1994). The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify. *Id.* at 398 (holding that "[t]he conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify"). In addition, "a lawyer who could provide only cumulative testimony may act as trial counsel." *Paretti v. Cavalier Label Co., Inc.*, 722 F.Supp. 985, 986 (S.D.N.Y.1989) (citing Ethical Consideration 5–10 (codified at Code of Prof. Responsibility, E.C.5–10 McK. Consol. Laws, Book 29 App.). The court in *Paretti* noted that it is possible for the court to order the parties to "avoid eliciting testimony" covering an attorney's mainly peripheral involvement in a negotiation or transaction where it is not relevant or necessary. *Id.* at 988.

### 2. Application

The first argument advanced by Mr. Shabbir in support of his motion to disqualify counsel is that Mr. Alvi is fully aware of plaintiff's political beliefs and the positions he has taken in the past and therefore he should be called as a witness to testify on behalf of plaintiff. (Pl.'s Mem. at 4). This is not an adequate basis on which to disqualify counsel since there has been no showing that Mr. Alvi's knowledge on this issue is either unique or substantially likely to be prejudicial to the

interests of Mr. Shabbir at trial. Certainly, Mr. Shabbir can testify as to his own political views and statements, and he is also free to call other witnesses to corroborate his claim that he organized a political party and made public speeches favoring various Pakistani officials. Even if Mr. Alvi was aware of plaintiff's activities in this regard—a claim which Mr. Alvi denies—there has been no showing that his client, PIA, would need to call Mr. Alvi to discredit plaintiff's testimony in this regard. Indeed, it is unclear whether there is a dispute as to what plaintiff's political views were and whether his views are a material issue of fact in this case. Thus, the Court finds that plaintiff's need to call Mr. Alvi as a witness to plaintiff's political ideology is not a sufficient reason to disqualify Mr. Alvi on his firm as counsel.

■ The second argument presented by plaintiff is somewhat more difficult. Plaintiff contends that Mr. Alvi should be called to testify as to his role in drafting a special release which plaintiff claims was given to him at the time of his termination, but which he refused to sign. (Pl.'s Mem. at 4). The existence of this special release is hotly contested between the parties. PIA disputes plaintiff's claim that he was given a different release from the one normally given to employees upon termination. (Alvi Decl. ¶ 4). Plaintiff seeks to call Mr. Alvi to have him verify that he prepared the "special" release form and asked plaintiff to sign it. (Pl.'s Mem. at 4). Mr. Alvi represents that he never drafted such a form and is unaware of the existence of a "special" form. (Alvi Decl. ¶ 4). Indeed, plaintiff has not presented a copy of this "special" release form, claiming that PIA retained the form when plaintiff re-

fused to sign it. Thus, if called to testify, Mr. Alvi would dispute plaintiff's claim that such a form was prepared solely for plaintiff. While it may be that PIA would want to call Mr. Alvi as a witness to refute plaintiff's testimony with respect to this release, at this point, it is unclear what relevance the existence of this form has to plaintiff's case or whether Mr. Alvi's testimony as to this issue is material.[8]

Given the "strict scrutiny" under which motions for attorney disqualification are to be evaluated, the Court finds that plaintiff has failed to carry his burden and declines to grant plaintiff's motion based on the witness-advocate rule at this time. Should it became clear that Mr. Alvi's testimony regarding this release becomes material to the issues in the case, such that PIA should call Mr. Alvi as a witness at trial, the Court will reconsider the issue at that time.

### C. Conflict of Interest—Concurrent Representation

Plaintiff also seeks disqualification of defendant's counsel, alleging that Mr. Alvi offered certain legal advice to plaintiff both during his employment (Am.Compl.¶ 25), as well as following plaintiff's termination. (Pl.'s Mem. at 4). Plaintiff claims that he called from his home telephone to Mr. Alvi's home telephone at the time of the termination of his employment and spoke with Mr. Alvi on that occasion, at which time, he claims Mr. Alvi gave him certain unspecified advice. (*Id.*)

#### 1. Standards

In analyzing plaintiff's claim that Mr. Alvi's continued representation of PIA should not be allowed because Mr. Alvi

---

8. Plaintiff has not suggested that Mr. Alvi made any statements at the time of the termination which plaintiff believes will support his claims of discriminatory treatment. Thus, it

appears that the main area of plaintiff's concern is the issue of the "special" form of release.

gave advice to Mr. Shabbir, this Court must first differentiate successive from concurrent representation, as the courts apply two distinct tests for assessing the propriety of each. Where representation is successive and an attorney seeks to represent a client whose interests are adverse to those of a former client, this Circuit looks to Canon 4 of the APA Code of Professional Responsibility, *see, e.g., Cheng v. GAF Corp.,* 631 F.2d at 1055–56; *NCK Org. Ltd. v. Bregman,* 542 F.2d at 129 n. 2, and to New York Disciplinary Rules 4–101 and 5–108. The purpose of Canon 4, which cautions that an attorney should not disclose confidences and secrets of a client, is "to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d at 571. Under the New York Code, disclosure of confidential client information is a violation of Disciplinary Rules 4–101 and 5–108. 22 N.Y. Comp.Codes R. & Regs. §§ 1200.19, 1200.27.

■ The Second Circuit uses the "substantial relationship test" to determine if these standards have been violated. *See Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 749 (2d Cir.1981); *First Hawaiian Bank v. Russell & Volkening, Inc.,* 861 F.Supp. 233, 238 (S.D.N.Y.1994); *Clark v. Bank of N.Y.,* 801 F.Supp. at 1197. Under this test, the former client seeking disqualification must establish the existence of a " 'substantial relationship' between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit," and that the attorney likely had access to "relevant privileged information" during the course of the prior representation. *Ives v. Guilford Mills, Inc.,* 3 F.Supp.2d 191, 202 (N.D.N.Y.1998) (quoting *Evans v. Artek*

*Sys. Corp.,* 715 F.2d at 791); *see also United States Football League v. Nat'l Football League,* 605 F.Supp. at 1452 (citing the *Evans* formulation of test). This test is intended to "ensure that disqualification will not be ordered . . . unless the failure to disqualify [the attorney] would 'taint' the trial." *Leber Assoc., LLC v. Entm't Group Fund, Inc.,* No. 00 CV 3759, 2001 WL 1568780, at *5 (S.D.N.Y. Dec. 7, 2001).

■ Where the lawyer's potential disqualification arises out of the simultaneous representation of two clients, the task before the court is to determine if Canon 5, which provides that a lawyer "should exercise independent judgment on behalf of a client," has been breached. ABA Code of Prof. Responsibility, Canon 5 (1970); *see also* N.Y.Code of Prof. Responsibility, D.R.5–105, 22 N.Y. Comp.Codes R. & Regs. § 1200.24. Clearly, "[s]uch dual responsibilities might dilute the attorney's vigorous prosecution on behalf of one of the clients." *In re Joint E. & S. Dist. Asbestos Litig.,* 133 F.R.D. 425, 430 (E.D.N.Y.1990) (Weinstein, J.). The substantial relationship test has been held inapplicable if both clients were aware of the other client's relationship to the lawyer and had no reason to believe that confidences of one party would be withheld from the other. *See American Special Risk Ins. Co. v. Delta Am. Re Ins. Co.,* 634 F.Supp. 112, 121 (S.D.N.Y.1987) (citing *Allegaert v. Perot,* 565 F.2d 246, 250–51 (2d Cir.1977)); *Kempner v. Oppenheimer & Co., Inc.,* 662 F.Supp. 1271, 1277–78 (S.D.N.Y.1987). In that case, disqualification will not be required because the moving party had no reasonable expectation of secrecy. *See Kempner v. Oppenheimer & Co., Inc.,* 662 F.Supp. at 1277. As the court noted in *Kempner:*

The expectation that information conveyed to a co-party's counsel will be held

in confidence from that attorney's client is no more plausible than the expectation that an attorney concurrently representing parties in the execution of a joint venture or franchise agreement will keep information relayed to him by one party secret from the other. In both situations, the party seeking disqualification should have been aware at the time of the previous transaction or proceeding that information garnered by attorneys in the course of furthering the common enterprise would be revealed by those attorneys to the other parties involved.

*Id.* at 1277–78.

The courts have cautioned attorneys in assuming common representation to carefully review the facts and circumstances to determine that the parties' interests are not adverse and "to explain fully to each client the implications of the common representation." *Felix v. Balkin,* 49 F.Supp.2d 260, 270 (S.D.N.Y.1999). New York's Code of Professional Responsibility requires that both clients be given a full explanation of the implications of common representation so that "each client [has] the opportunity to evaluate the need for representation free of any potential conflict." N.Y.Code of Prof. Responsibility, E.C.5–16 McK. Consol. Laws, Book 29 App. (2003).

### 2. *Application*

■ First, it does not appear that plaintiff is claiming that he shared confidences and secrets with Mr. Alvi. Had he done so, it is clear from plaintiff's own admission that he had no reasonable expectation that his statements to Mr. Alvi would remain confidential. There is no dispute that Mr. Alvi has represented PIA as its General Counsel for many years and that Mr. Shabbir was fully aware of Mr. Alvi's representation of PIA. (*See, e.g.,*

Am. Compl. ¶¶ 25–26). Thus, it does not appear that plaintiff is claiming that Mr. Alvi violated Canon 4.

Plaintiff appears to argue that Mr. Alvi violated Canon 5 by allegedly giving him legal advice while also representing PIA. To the extent that plaintiff is claiming that Mr. Alvi gave him advice, it is unclear from Mr. Shabbir's papers what exactly Mr. Alvi allegedly said to plaintiff that constituted legal advice or how that advice caused prejudice to plaintiff. Even accepting as true Mr. Shabbir's claim that he was advised by Mr. Alvi to sue PIA, a claim which Mr. Alvi denies, plaintiff was clearly aware of Mr. Alvi's competing interest in representing PIA and was certainly free to disregard the advice. Knowing that Mr. Alvi represented PIA, Mr. Shabbir could not reasonably have expected that any information imparted to Mr. Alvi would have been withheld from PIA during the course of Alvi's representation of PIA. *See Allegaert v. Perot,* 565 F.2d at 250–51 (denying a motion for disqualification where, after a dispute arose between joint venturers, a law firm continued to represent its long-standing clients against the other joint venturer, and noting that the party moving for disqualification could not have reasonably expected that the law firm would remain loyal to its interests at the expense of the firm's primary clients).

Nowhere in his papers does Mr. Shabbir begin to suggest that Mr. Alvi ever ceased his representation of PIA, nor does Mr. Shabbir present any evidence to show that he retained Mr. Alvi at any time or paid Mr. Alvi a fee in connection with any services rendered to Mr. Shabbir. Indeed, there is no claim that Mr. Shabbir ever imparted any confidences and secrets to Mr. Alvi at any time during their conversations.

Having reviewed the submissions of both parties, this Court finds that there

was no successive or concurrent representation here, and thus disqualification of the Firm pursuant to Canons 4 or 5 is not warranted.

### D. *Alleged Misconduct*

 Finally, plaintiff seeks to disqualify counsel based on the alleged professional misconduct of members of the Firm during the course of these proceedings. Specifically, plaintiff alleges that the Firm's Mr. Blumberg, who has been largely responsible for conducting the discovery in this litigation, made "insulting and defamatory remarks" about plaintiff in court and during the course of deposing plaintiff. (Pl.'s Mem. at 1). Among other things, plaintiff asserts that Mr. Blumberg ridiculed him during the deposition, causing the stenographer to laugh, and "called [him] a taxi driver in an insulting manner." (*Id.* at 2). Plaintiff also asserts that Mr. Blumberg stated during a hearing that "Mr. Shabbir has two faces. One face is in the Court while the other face is out of court." (*Id.* at 1).

In addition, plaintiff claims that counsel made false statements in court and lied in the PIA Answer when denying certain allegations in the Complaint. (*Id.* at 3). Specifically, in his Complaint, plaintiff alleged that "part of his job was regularly coordinating legal cases of the defendant." (*Id.*) Plaintiff argues that by denying this allegation in the Answer, Mr. Alvi and the Firm were lying. (*Id.*) In response, Mr. Alvi denies that either Mr. Blumberg or anyone from his firm has engaged in professional misconduct. (Alvi Decl. ¶¶ 9–10).

Canon 9 provides that attorneys "should avoid even the appearance of professional impropriety." ABA Code of Prof. Responsibility, Canon 9 (1970); *accord* N.Y.Code of Prof. Responsibility, D.R. 9–101 (1999), 22 N.Y. Comp.Codes R. & Reg. § 1200.45 (same); *see also Bd. of Educ. v. Nyquist,*

590 F.2d at 1246. However, the Court of Appeals has cautioned that courts should be "quite hesitant" to disqualify attorneys solely on the basis of Canon 9, if a violation of Canon 4 or 5 has not also been found. *Bd. of Educ. v. Nyquist,* 590 F.2d at 1246.

Thus, at this point, in the absence of any evidence supporting plaintiff's claims of misconduct, apart from plaintiff's unsworn statements in these papers, the Court finds these allegations of impropriety to be an insufficient basis on which to order counsel's disqualification. The Court notes that it expects all parties, including attorneys, who appear before this Court to treat their adversaries with professional respect. The Court reminds the parties of the words of the United States Supreme Court, stating that a licence to practice law "requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.... It is clear that 'conduct unbecoming a member of the bar' is conduct contrary to professional standards." *In re Snyder,* 472 U.S. at 644–45. Should there be problems in the future, the parties are directed to bring the issue promptly to the attention of the Court.

A conference has been scheduled in the above-captioned case on **January 5, 2006 at 3:30 p.m.,** before the Honorable Cheryl L. Pollak, United States Magistrate Judge, in Room 538 at 225 Cadman Plaza East, Brooklyn, New York. No request for adjournment will be considered unless made in writing at least forty-eight (48) hours before the scheduled conference.

The Clerk is directed to mail copies of this Memorandum and Order to the parties.

**SO ORDERED.**